**Sonia Eladia Acosta SALDIVAR, Petitioner,**

v.

**Erick RODELA, Respondent.**

**No. EP–12–CV–00076–DCG.**

United States District Court, W.D. Texas, El Paso Division.

Oct. 1, 2012.

---

920

Pamela M. Brown, Texas RioGrande Legal Aid, Inc., Weslaco, TX, for Petitioner.

James Darrell Lucas, Attorney at Law, Marlene Gonzalez, Law Office of Marlene Gonzalez, PLLC, El Paso, TX, for Respondent.

*AMENDED MEMORANDUM OPINION AND ORDER* [1]

DAVID C. GUADERRAMA, District Judge.

On this day, the Court considered Petitioner Sonia Eledia Acosta Saldivar's "Application for Reasonable Attorneys' Fees and Costs and Brief in Support" (ECF No. 35), filed in the above-captioned action brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, 25 Oct. 1980, T.I.A.S. No. 11,670, 19 I.L.M. 1501 ("Hague Convention" or "Convention"), implemented in the United States by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601–11 ("ICARA"). Having prevailed on the merits of the underlying action, Petitioner moves for award of expenses, including legal fees and costs, pursuant to 42 U.S.C. § 11607(b)(3), the fee-shifting provision of ICARA. After careful consideration, the Court, for the reasons that follow, **GRANTS IN PART** and **DENIES IN PART** Petitioner's fee application.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 22, 2012, the Court entered judgment in favor of Petitioner, in accordance with its opinion issued on the same day. *Saldivar v. Rodela,* 879 F.Supp.2d 610 (W.D.Tex.2012) (Guaderrama, J.). The Court determined that Respondent Erick Rodela wrongfully retained the parties' seven-year-old son, D.I.R.A., in El Paso, Texas, and ordered him to surrender the child to the custody and possession of Petitioner for the purpose of returning D.I.R.A. to Chihuahua, Mexico, the child's habitual residence. *Id.* at 630–31, 632–33. Further, the Court ordered Petitioner to file an itemization of fees, costs, and other expenses she seeks to recover pursuant to § 11607(b)(3). *Id.* at 632–33. Observing that at trial and in his answer to Petitioner's complaint, Respondent argued that an award would be inappropriate because Petitioner is represented for free by counsels from a publicly funded legal aid entity, the Court instructed the parties to submit briefs on this argument. *Id.* at 631–33.

On July 7, 2012, Petitioner filed her fee application along with a supporting brief, seeking attorneys' fees in the amount of $60,022.00, litigation costs in the amount of $11,718.16, and out-of-pocket expenses in the amount of $1,398.38. Pet'r's Appl. for Reasonable Att'ys' Fees & Costs and Br. in Supp. 14 [hereinafter Pet'r's Fee Appl.], ECF No. 35; Reply Supporting Pet'r's Appl. for Att'y Fees & Cost 5 [hereinafter Pet'r's Reply], Attach. 1, at 8, ECF No. 39. Respondent filed a responsive brief on July 16, Resp't Rodela's Resp. to Pet'r's Appl. for Att'ys' Fees 5 [Resp't's Resp.], ECF No. 38, and Petitioner followed with a reply on July 19. On July 20, Respondent filed a notice of appeal from the Court's judgment entered in this case.

Because in his responsive brief, Respondent asserts that he is financially unable to pay any award of fees and costs, the Court issued an order on August 3, 2012, instructing Respondent to file a supplemental brief and submit evidence in support of his assertion. Order to File Suppl. Br., ECF No. 42. On August 7, Respondent complied with that order, Suppl. Br. of Erick Rodela [hereinafter Resp't's Suppl. Br.], ECF No. 43, and on August 13, Petitioner responded by filing her supplemental brief and an affidavit, Pet'r's Suppl. Br. in Resp. to Resp't's Suppl. Br. on Ability

---

1. Pursuant to Federal Rule of Civil Procedure 60(a), the Court amends the "Memorandum Opinion and Order" (ECF No. 49) entered in this case on September 28, 2012, in order to correct typographical errors. Accordingly, it is ordered that this "Amended Memorandum Opinion and Order" supersedes ECF No. 49.

to Pay Att'ys Fees & Cost 2 [hereinafter Pet'r's Suppl. Br.], ECF No. 44.

Having retained jurisdiction over Petitioner's fee application, the Court will now address its merits. *See Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 524–25 (5th Cir.2002) ("The district court ... retains jurisdiction to resolve motions for ... attorneys' fees while a judgment on the merits is pending on appeal. Such motions are collateral to the merits, so the appeal does not divest the district court of jurisdiction." (citation omitted)).

## II. DISCUSSION

### A. WHETHER AN ORDER AWARDING FEES AND COSTS IS CLEARLY INAPPROPRIATE

■ Where, as here, a court has ordered the return of the child to his habitual residence, the court must order the respondent-abductor to pay "necessary expenses incurred by or on behalf of the petitioner," unless to so order would be "clearly inappropriate." 42 U.S.C. § 11607(b)(3); *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 346 (5th Cir.2004). The respondent has the burden to show that an award of fees or expenses would be "clearly inappropriate." *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir.2004). Respondent advances two arguments why an award in this case would be so: (1) that Petitioner is represented for free by a publicly funded legal aid entity; and (2)

that Petitioner comes to the Court with unclean hands. Resp't's Resp. 3–4, 6–7. The Court will address them in turn.[2]

### 1. Respondent's Argument That an Award Is Inappropriate Because Petitioner Is Represented by a Publicly Funded Legal Aid Services Entity

■ Respondent argues that Petitioner should be denied the statutory attorneys' fees and costs because her attorneys are employed by Texas RioGrande Legal Aid, Inc. ("TRLA"), a publicly funded legal aid entity.[3] Further, Respondent maintains that because Petitioner or a relative of Petitioner on her behalf has not paid or agreed to pay any attorneys' fees or costs to TRLA, the requested fees and costs have not been incurred on her behalf. Awarding fees under such circumstances, Respondent contends, would reward legal aid societies, who are already funded by taxpayers, rather than compensating a petitioner for her legal fees and costs. In other words, Respondent invites the Court to interpret § 11607(b)(3) as precluding an award where the petitioner is represented for free by a publicly funded legal aid entity.[4]

■ "When interpreting statutes, we begin with the plain language used by the drafters. Furthermore, each part or section of a statute should be construed in connection with every other part or section to produce a harmonious whole." *United*

2. Respondent also advances several arguments of the form that Petitioner has failed to follow certain local rules in filing her fee application. Resp't's Resp. 1–3. The Court has carefully reviewed them and finds that any failure by Petitioner is not fatal. Respondent also contends that due to his financial dire straits, a fee award would not be appropriate. The Court will address that argument at a later point in this opinion. *See* Part II.B.1(d)(ii), *infra*.

3. Texas RioGrande Legal Aid, Inc. (formerly known as Texas Rural Legal Aid, Inc.) is a

Legal Services Corporation ("LSC") recipient within the meaning of the Legal Services Corporation Act, 42 U.S.C. §§ 2996 *et seq.*

4. Respondent vigorously pressed similar arguments at trial as well as in his answer to Petitioner's complaint. Resp't's Original Answer 4, ECF No. 8. The Court notes that Respondent's brief in response to Petitioner's fee application is not illuminating to the extent that other than referencing § 11607(b)(3) and asking the Court to adopt his interpretation of it, he cites no authority in support of his arguments.

*States v. Uvalle–Patricio,* 478 F.3d 699, 703 (5th Cir.2007) (internal quotation marks and citation omitted). However, before engaging in the task of statutory interpretation, the Court pauses to sketch the background on how the various subsections of § 11607(b) correlate to several provisions of the Convention and what role, if any, legal aid entities were expected to play in effectuating the purposes of the Convention. *See Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.,* 550 U.S. 81, 89–90, 127 S.Ct. 1534, 167 L.Ed.2d 449 (2007) (departing from the normal order for statutory interpretation, i.e., an order that begins with the statutory language, and examining first the provision's background and basic purposes, because of the technical nature of the language in question).

Section 11607(b) reads in full:

(b) Costs incurred in civil actions

(1) Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of the child involved and any accompanying persons, except as provided in paragraphs (2) and (3).

(2) Subject to paragraph (3), legal fees or court costs incurred in connection with an action brought under section 11603 of this title shall be borne by the petitioner unless they are covered by payments from Federal, State, or local legal assistance or other programs.

(3) Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

42 U.S.C. § 11607(b).

The first two paragraphs of § 11607(b) have their roots in a reservation the United States made at the time it ratified the Convention.[5] The Senate gave its consent

---

**5.** The reservation was made to the second paragraph of Article 26, which states in relevant part:

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers.

Hague Convention, art. 26, ¶ 2. In effect, the provision requires a requested State to "bear the cost of proceedings and provide legal counsel" for a petitioner or applicant seeking relief under the Convention. Linda Silberman, *Hague International Child Abduction: A Progress Report,* 57 Law & Contemp. Probs. 209, 215 (1994). The subject of this provision was one of "the most controversial" matters that the drafters of the Convention dealt with. *See* Elisa Perez–Vera, *Explanatory Report: Hague Convention on Private International Law* ¶ 135 [hereinafter Perez–Vera Report], *in*

3 Actes et Documents de la Quatorziéme session 425, 468 (La Haye: Imprimerie Nationale 1982). It reflects the desire of some of the signatories to the Convention, who sought deletion of Article 22(2)(a) of the preliminary draft of the Convention, which provided that Central Authorities of Contracting States "shall not impose any charges in relation to applications submitted under this Convention, but may ... require the payment of any charges which are not met through the legal aid system and which arise from the employment of legal counsel." 3 Actes et Documents de la Quatorziéme session, 169–70; *see also id.* at 321–22. They insisted that a requested State must cover "all costs and expenses *not covered by* [its] *legal aid and advice system* such as those which arise out of legal proceedings or, where applicable, the participation of counsel or legal advisers." Perez–Vera Report ¶ 135 (emphasis added).

Delegates from other countries, including the United States, objected to bearing legal fees and costs of a petitioner or applicant. 3 Actes et Documents de la Quatorziéme ses-

to the Convention subject to the following reservation:

> Pursuant to the third paragraph of Article 26, the United States declares that it will not be bound to assume any costs or expenses resulting from the participation of legal counsel or advisers or from court and legal proceedings in connection with efforts to return children from the United States pursuant to the Convention *except insofar as those costs or expenses are covered by a legal aid program.*

132 Cong. Rec. S15767 (Oct. 9, 1986) (emphasis added). Consequently, "the United States is under no obligation itself to provide legal services or pay for private legal counsel hired by the petitioner, and the assumption of such costs is at least initially up to the foreign left-behind parent." Peter H. Pfund, *The Hague Convention on International Child Abduction, the International Child Abduction Remedies Act, and the Need for Availability of Counsel for All Petitioners,* 24 Fam. L.Q. 35, 48 (1990); *see also* Dep't of State, *Hague International Child Abduction Convention; Text and Legal Analysis,* 51 Fed. Reg. 10494, 10508 (Mar. 26, 1986) [hereinafter Convention Analysis] (The effect of the reservation is to "place at least the initial burden of paying for counsel and legal proceedings on the applicant rather than on the federal government."). Paragraph (1) and (2) codify the essence of the reservation by providing that a petitioner, and—if the petitioner is represented by a federal, state, or local legal assistance program—that program are initially responsible for the expenses incurred in a court action under the Convention.[6]

■ The third and final paragraph of § 11607(b) is the fee-shifting provision of ICARA. It "reflects" a cognate provision in the Convention: the last paragraph of Article 26.[7] H.R. Rep. 100–525 (1988) (House Judiciary Committee Report on ICARA), *reprinted in* 1988 U.S.C.C.A.N.

---

sion, 321, 346. "[S]ince different criteria for the granting of legal aid were rooted in the very structure of the legal systems concerned, any attempt to make one approach prevail absolutely over the others would have led to the automatic exclusion of certain States from the Convention." Perez–Vera Report ¶ 135. Eventually, the gap between the two groups of delegates was closed by inclusion of a proviso in Paragraph 3 of Article 26 that allows for a Contracting State to make a reservation. That paragraph provides:

> [A] Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, *except insofar as those costs may be covered by its system of legal aid and advice.*

Hague Convention, art. 26, ¶ 3 (emphasis added). The United States made such a reservation.

6. House Judiciary Committee Report on ICARA explains that paragraph § 11607(b)(1) was drafted with the reservation in mind. H.R. Rep. 100–525 (1988), *reprinted in* 1988

U.S.C.C.A.N. 386, 395 ("This [§ 8(b)(1) of H.R. 3971] is consistent with the State Department's proposal that the United States ratify the Convention subject to a reservation, permitted by Article 42."). Section § 11607(b)(2) expands on § 11607(b)(1) by incorporating language that parallels the text of the reservation. *Compare* § 11607(b)(2) ("... unless they are covered by payments from Federal, State, or local legal assistance or other programs."), *with* 132 Cong. Rec. S15767 (reservation) ("... except insofar as those costs or expenses are covered by a legal aid program."), *and* Hague Convention, art. 26, ¶ 3 ("... except insofar as those costs may be covered by its system of legal aid and advice.").

7. The last paragraph of Article 26 reads:

> Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for

386, 395. These two fee-shifting provisions are nearly identical, with one big difference: ICARA makes a fee award mandatory, whereas Article 26 makes it discretionary. *See Sealed Appellant*, 394 F.3d at 346 (comparing Article 26 and § 11607(b)(3) and noting "ICARA more strongly states the court '*shall* order the [removing parent] to pay necessary expenses . . . .' " (emphasis and alterations in original) (quoting § 11607(b)(3))). Section 11607(b)(3), like its counterpart in Article 26, was intended not only to compensate the bearers of the expenses incurred due to the respondent's wrongful conduct, but also to provide "an additional deterrent to wrongful international child removals and retentions." H.R. Rep. 100–525, *supra*. *See also* Convention Analysis 51 Fed.Reg. 10494, 10511 ("The purposes underlying Article 26 are to restore the applicant to

> locating the child, the costs of legal representation of the applicant, and those of returning the child.
> Hague Convention, art. 26, ¶ 4.

8. Article 25 of the Convention provides:

> Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.
> Hague Convention, art. 25.

9. In commenting on this article as originally contained in the preliminary draft of the Convention, the United States informed the delegates at the Fourteenth Session of the Hague Conference on Private International Law (which adopted the Convention) that the article was acceptable in principle, but pointed out that in this country "only persons of very low income are eligible for legal aid." 3 Actes et Documents de la Quatorziéme session 244 (Comments of the United States on Preliminary Document No. 6). It further related that legal aid entities are financed by the Federal Legal Services Corporation, which sets stan-

the financial position he or she would have been in had there been no removal or retention, as well as to deter such conduct from happening in the first place.").

With regard to legal aid entities, the drafters of the Convention, Congress, and the Department of State contemplated that such entities would play an active role in effectuating the purposes of the Convention. Article 25 [8] "provides for the extension of legal aid and advice to foreign applicants on the same basis and subject only to the same eligibility requirements as for nationals of the country in which that aid is sought." [9] Convention Analysis, 51 Fed.Reg. 10494, 10508. This article was not amenable to any reservation and became the law of the land by operation of ICARA.[10] § 11601(b)(2) ("The provisions of [ICARA] are in addition to and not in lieu of the provisions of the Convention.").

> dards of eligibility for those entities, and that "certain types of proceedings, which may vary from time to time, are excluded from legal aid." *Id.*

10. Indeed, pursuant to Article 25, LSC in 1997 promulgated a regulation allowing LSC grantees, like TRLA, to represent "indigent foreign nationals who seek assistance pursuant the Hague Convention on the Civil Aspects of International Child abduction and the Federal implementing statute, the International Child Abduction Remedies Act, 42 U.S.C. 11607(b), provided that they are otherwise financially eligible." 62 Fed.Reg. 19409, 19413, 19415 (Apr. 21, 1997) (to be codified as 45 C.F.R. § 1626.10(e)). *See also* LSC Opinion Letter by J. Kelly Martin, Assistant General Counsel of LSC, to Andy Harrington, Staff Attorney of Alaska Legal Services Corporation (Mar. 18, 1993) (on file with the Court) (noting that, as implemented in 45 C.F.R. Part 1626, the LSC Act's, 42 U.S.C. § 2996 *et seq.*, restriction that—an alien is not eligible to receive legal assistance with funds provided by the LSC, unless the alien falls within an enumerated category of exceptions, none of which would encompass foreign nationals— was in conflict with Article 25, and treating Article 25 as an exception to the general re-

Congress made further explicit its intent that legal aid programs would represent indigent petitioners in Hague actions, by making reference to legal aid programs in § 11607(b)(2): "... unless they are covered by payments from Federal, State, or local legal assistance or other programs." § 11607(b)(2). Paragraph (2)'s "unless"-clause (language of exception) is a congressional recognition that although federal government would not pay for legal and other expenses of indigent dispossessed parents from overseas, they may receive assistance of this country's legal aid entities in seeking relief under the Convention.

Relatedly, Article 7 requires a Contracting State's Central Authority to take, either directly or through any intermediary, all appropriate measures, *inter alia,* "to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child ..." and "where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers." Hague Convention, art. 7(f)-(g). Because the United States made the reservation to Article 26, these provisions create "less than a Convention-based obligation" on its Central Authority to assist petitioners in identifying private counsels who are willing to provide services *pro bono* or on a reduced fee basis, and, if eligible, "in securing representation by a Legal Aid or Legal Services lawyer." Pfund, *supra,* 24 Fam. L.Q. at 48; Convention Analysis, 51 Fed.Reg. 10494, 10512. Indeed, the Department of State's Office of Children's Issues, which serves as the Central Authority for the United States, strives to fulfill these obligations by, *inter alia,* referring qualified applicants to legal aid programs throughout the country.[11]

With this exposition of the relevant background, the Court turns to the language of § 11607(b)(3). The text of that provision makes clear that to be awardable, the costs and fees need not be incurred by the petitioner; they can be "incurred ... on behalf of the petitioner." § 11607(b)(3). ICARA does not define "incur." Webster's Third New International Dictionary defines "incur" as to "become liable or subject to," or to "bring down upon oneself." Webster's Third New International Dictionary Unabridged 1146 (1981).[12] Certainly, when a legal aid entity makes a payment out of its purse for such expenses as court fees for filing a Hague action, it incurs those expenses on the petitioner's behalf. As for attorneys' fees, the entity, to be sure, does not likewise disburse money out of its purse to a third party and the petitioner is under no obligation to pay the entity for attorneys' fees. Nevertheless, through time and effort expended by its own attorneys who represent the petitioner, the entity incurs—brings down upon itself—the attorneys' fees on behalf of the petitioner, which she would otherwise have had to pay, were she not indigent and were able to hire a private attorney. *See Miller v. Amusement Enters., Inc.,* 426 F.2d 534, 538–39 (5th Cir.1970) ("What is required is not an obligation to pay attorney fees. Rather what—and all—that is required is

---

strictions set out in the appropriations acts and Part 1626).

**11.** Dep't of State, http://travel.state.gov/abduction/incoming/legalaid/legalaid_5394.html (last visited Sept. 9, 2012); *see also* http://travel.state.gov/abduction/incoming/legalaid/legalaid_4309.html (last visited Sept. 9, 2012).

**12.** *See also* 7 Oxford English Dictionary 835 (2d ed.1989) (defining "incur" as "to become through one's own action liable or subject to; to bring upon oneself"); Black Law Dictionary 768 (6th ed.1990) (defining "incur" as "[t]o become liable or subject to, to bring down upon oneself, as to incur debt, ... and to become through one's own action liable or subject to").

the existence of a relationship of attorney and client, a status which exists wholly independently of compensation, as witness ... the now widespread organized services on behalf of the poor."); *Centennial Archaeology, Inc. v. AECOM, Inc.,* 688 F.3d 673, 679 (10th Cir.2012) ("[A]n 'attorney fee' arises when a party uses an attorney, regardless of whether the attorney charges the party a fee."). *See also United States v. Claro,* 579 F.3d 452, 465–66 (5th Cir.2009) (interpreting the word "incur" in the fee-shifting statute under the Equal Access to Justice Act to conclude that the general rule is that fees are incurred "when the litigant has a legal obligation to pay them," but allowing an exception where "the prevailing party is represented *pro bono* or by a legal-services organization").

However, nothing in the text of Paragraph (3) limits the class of persons or entities that may incur expenses "on behalf of" the petitioner and therefore recover those expenses from the respondent-abductor. The overall design and structure of § 11607(b) does not either. *See K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."). Paragraph (2) simply suggests that a legal aid entity may cover some or all of the expenses of the petitioner, but falls short of saying whether the entity may or may not recover those expenses when the petitioner is the prevailing party. For that, we are again remitted to Paragraph (3), as each of the first two paragraphs is expressly made "subject to"

Paragraph (3). There is, however, one inference that can be drawn from the overall structure of § 11607(b). While § 11607(b)(2) explicitly refers to publicly funded legal aid programs in the sense of an exception (i.e., "... unless they are covered by payments from Federal, State, or local legal assistance ... programs"), § 11607(b)(3) does not. Had Congress intended to preclude legal aid entities from the scope of § 11607(b)(3), it certainly knew how to evince that intent and could have included in § 11607(b)(3) language of exception—similar to that it employed in § 11607(b)(2). The absence of such language is a meaningful omission: Congress did not intend to preclude legal aid entities from recovering expenses from the respondent. *Cf. Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 205 (2d Cir. 1999) (noting that Congress was well aware of what language was required to evince an intent to preclude a waiver of judicial remedies, and "the absence of that language [in the text of the statute] is a meaningful omission").

Moreover, the Court's search into ICARA's scant legislative history has unearthed no congressional debate or discussion on the scope of the phrase "on behalf of," much less on the issue of whether legal aid entities are precluded from recovering under § 11607(b)(3). However, the drafting history of Article 26's fee-shifting provision, which also contains the phrase "on behalf of" and which Congress viewed as being reflected in § 11607(b)(3), as well as the Department of State's understanding of that phrase provide some clues.[13] At the Fourteenth Session of the Hague Conference on Private International Law, it was the United States that took

---

**13.** *See Zicherman v. Korean Air Lines Co.,* 516 U.S. 217, 226, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996) ("[W]e have traditionally considered as aids to [a treaty's] interpretation the negotiating and drafting history (*travaux preparatoires* )." (citations omitted)). *See also Kolov-*

*rat v. Or.,* 366 U.S. 187, 194, 81 S.Ct. 922, 6 L.Ed.2d 218 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight.").

the initiative to include the fee-shifting provision in Article 26 and proposed a draft of the provision for consideration by the members of the First Commission of the Fourteenth Session. As initially proposed, the provision referred only to necessary expenses "of the applicant." [14] 3 Actes et Documents de la Quatorziéme session 244 (La Haye: Imprimerie Nationale 1982). Minutes of the First Commission's meetings reveal that the United States delegate to the Convention subsequently proposed the addition of the phrase "or on behalf of." *Id.* at 376 (statement of J.M. Selby, attorney-advisor to the Department of State). The minutes further reveal that the United States delegate expansively understood the phrase "on behalf of" to permit recovery of expenses incurred by "people other than the applicant" and—even the "Central Authority." [15] *Id.* Consistent with its representations at the First Session, the Department of State, in the document *Hague International Child Abduction Convention; Text and Legal Analysis*, 51 Fed.Reg. 10494, published by it, explains: "Under the last paragraph of Article 26 . . . the CA [Central Authority] could recover its outlays on behalf of the petitioner, including costs associated with, or payments made for . . .

the legal representation of the petitioner." [16] Convention Analysis, 51 Fed.Reg. 10494, 10513. Certainly, the Central Authority, a governmental agency, is no less publicly funded than a legal aid entity, such as TRLA. It follows therefore that under the Department of State's broad interpretation, legal aid entities fall within the scope of the fee-shifting provision of Article 26.

■ "Of course, it is Congress' understanding of what it was enacting that ultimately controls." *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 31, 102 S.Ct. 821, 70 L.Ed.2d 792 (1982). There are reasons to believe that Congress in enacting ICARA understood the phrase "on behalf of" in the same way as did the Department of State. First, Congress was aware of the department's interpretation, because when the Senate considered whether to give its consent to the Convention, it had before it the document *Hague International Child Abduction Convention; Text and Legal Analysis*, which was transmitted to the Senate by the department. 51 Fed. Reg. 10494, 10494. More importantly, when the 100th Congress deliberated on the passage of H.R. 3971, which ultimately became ICARA, it likewise had the document before it. [17] Second, so far as ap-

---

**14.** The provision as initially proposed by the United States read:

> Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary travel or other expenses *of the applicant,* including the costs of legal representation and return of the child.

3 Actes et Documents de la Quatorziéme session 244 (Comments of the United States on Preliminary Document No. 6) (emphasis added).

**15.** *See Medellin v. Texas,* 552 U.S. 491, 513, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008)

("[T]he United States' interpretation of a treaty is entitled to great weight." (internal quotation marks and citations omitted)).

**16.** The Court recognizes that the United States's reservation to Article 26 makes it unlikely that the U.S. Central Authority would incur expenses for legal representation of the petitioner. However, the point made here is that the Department of State viewed the phrase "on behalf of broadly to allow even a governmental entity to recover under Article 26.

**17.** *International Child Abduction Act: Hearings on H.R. 2673 and H.R. 3971 Before the Subcomm. on Administrative Law and Governmental Relations of the House Comm. on the Judiciary,* 100th Cong., 2d. Sess. 30, 36

pears, the department was "the effective author," *Cloverleaf Butter Co. v. Patterson,* 315 U.S. 148, 178, 62 S.Ct. 491, 86 L.Ed. 754 (1942) (Frankfurter, J., dissenting), of ICARA's fee-shifting provision. Introduced in the House by Representative Lantos in February 1988, H.R. 3971 carried over the fee-shifting provision from H.R. 2673, a similar bill that was also introduced by Representative Lantos in June 1987 to implement the Convention.[18] H.R. Rep. 100–525, *reprinted in* 1988 U.S.C.C.A.N. 386, 387–88. Of note, H.R. 2673, in turn, was drafted by the Department of State.[19] Because Congress adopted the department's proposed provision in the same form it was presented, Congress is presumed to have adopted the broad interpretation given by the department to the phrase "on behalf of." *See Vogel Fertilizer Co.,* 455 U.S. at 31, 102 S.Ct. 821 ("[W]e necessarily attach 'great weight' to agency representations to Con-

gress when the administrators 'participated in drafting and directly made known their views to Congress in committee hearings.'" (quoting *Zuber v. Allen,* 396 U.S. 168, 192, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969))).

In summary, given that the text of § 11607(b)(3) does not in any way limit the scope of the entities who may recover under it, the structure of § 11607(b) suggests that Congress did not intend to cut off from recovery legal aid entities—the very entities on which Congress intended to rely in fulfilling the United States's obligations under the Convention, and the legislative history points to Congress's adoption of the Department of State's broad understanding of the phrase "on behalf of," the Court concludes that under ICARA, an award of expenses, including legal fees and costs, is not inappropriate where the petitioner is represented by a publicly funded

(1988) [hereinafter Hr'g on H.R. 2673 and H.R. 3971 Before House Subcomm.].

**18.** Representative Lantos introduced H.R. 3971 in response to concerns raised by the House Subcommittee on Administrative Law and Governmental Relations regarding H.R. 2673. H.R. Rep. 100–525, *reprinted in* 1988 U.S.C.C.A.N. 386, 388. "H.R. 3971 is similar to H.R. 2673, but does not contain provisions amending the Social Security Act and the Internal Revenue Act of 1986." *Id.*

**19.** Hr'g on H.R. 2673 and H.R. 3971 Before House Subcomm. 35 ("The Administration bill before you, introduced ... as H.R. 2673, was prepared by the State Department.") (testimony of Peter H. Pfund of Dep't of State), 70 ("H.R. 2673 and S. 1347 were developed ... by the State Department.") (testimony of Patricia M. Hoff of the American Bar Association).

As important, the fee-shifting provisions in these bills and § 11607(b)(3) track one another almost *ipsissimis verbis.* Section 106(d) of H.R. 2673 read:

Any court ordering the return of a child under the Convention shall order the re-

spondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of return proceedings, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

Hr'g on H.R. 2673 and H.R. 3971 Before House Subcomm. 9. Section 7(b)(3) of H.R. 3971 read:

Any court ordering the return of a child *pursuant to an action brought under section 3* shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings *in the action,* and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

Hr'g on H.R. 2673 and H.R. 3971 Before House Subcomm. 22 (italics added to highlight differences between this provision and its counterpart in H.R. 2673). In the final bill, § 7(b)(3) was renumbered as § 8(b)(3). Pub.L. No. 100–300, 102 Stat. 437 (Apr. 29, 1988).

legal aid entity, such as TRLA.[20] That conclusion is bolstered by case law upholding attorney's fee awards to publicly funded legal aid entities under similar fee-shifting provisions. *See, e.g., Sellers v. Wollman,* 510 F.2d 119, 123 (5th Cir.1975) (fees under the Truth–in–Lending Act) ("[P]laintiffs should not be denied attorney's fees because their attorney was employed by a legal aid society."); *Rodriguez v. Taylor,* 569 F.2d 1231, 1244–46 (3d Cir. 1977) (fee award in ADEA case); *Torres v. Sachs,* 538 F.2d 10, 11–13 (2d Cir.1976) (fee award under Voting Rights Act) (rejecting the argument that "because publicly financed legal services entities supply counsel ... some measure of fees should be used less than the going rates for similar services received by privately employed counsel"); *Martinez v. Roscoe,* 100 F.3d 121, 124 (10th Cir.1996) (attorney's fees as sanction under trial court's inherent power) ("We perceive no reason to distinguish between attorneys who are paid by a party and attorneys who are paid with public funds.").

Moreover, policy reasons buttress the Court's conclusion. Denying awards to legal aid entities would thwart congressional intent of deterring future violations of the Convention—at least in those situations where innocent left-behind parents are indigent.[21] It would embolden would-be abductors who know *ex ante* that the dispossessed parent would have no recourse but to avail services of a legal aid entity. Additionally, to deny an award would provide a perverse incentive to an abducting par-

**20.** The Court hastens to add a related point. The ability of legal aid entities to claim, collect, and retain attorneys' fees awardable under a fee-shifting statute may be dictated by other acts of Congress and regulations promulgated by LSC. For example, in 1996, "responding to concerns that LSC had strayed from its core mission of 'funding basic legal services for poor individuals,'" *Legal Aid Servs. of Or. v. Legal Servs. Corp.,* 608 F.3d 1084, 1088 (9th Cir.2010) (internal brackets omitted) (citing S. Rep. 104–392, at 1 (Sept. 30, 1996)), Congress included an appropriations rider in the Omnibus Consolidated Rescissions and Appropriations Act of 1996 that provided that none of the funds appropriated in that Act could be used to provide financial assistance to any entity "that claims (or whose employee claims), or collects and retains, attorneys' fees pursuant to any Federal or State law permitting or requiring the awarding of such fees." Pub.L. 104–134, § 504(a)(13), 110 Stat. 1321 (April 26, 1996). The same year, LSC adopted a regulation implementing that statutory restriction. 61 Fed.Reg. 45762, 45763 (Aug. 29, 1996) (to be codified as 45 C.F.R. § 1642.3). Since then and until 2009, the statutory restriction on fees was included in subsequent appropriations bills by reference. *See, e.g.,* Omnibus Appropriations Act of 2009, Pub.L. 111–8, 123 Stat. 524, 593 (Mar. 11, 2009). Recently, however, Congress lifted that restriction by striking paragraph (13) of § 504 as contained in Public Law 104–134. Consolidated Appropriations Act of 2010, Pub.L. 111–117, § 533, 123 Stat 3034 (Dec. 16, 2009); *Legal Servs. of Or.,* 608 F.3d at 1088 n. 1. In response, LSC repealed 45 C.F.R. § 1642.3, thus permitting its grantees to claim, collect, and retain attorneys' fees under federal or state law providing fee awards. 75 Fed.Reg. 6816, 6817 (Feb. 11,2010).

In any event, the Court's task here is limited to ascertaining whether ICARA permits an award of fees and costs to legal aid entities, such as TRLA. Should there be lingering concerns about legal aid entities' ability to claim and collect fees under a fee-shifting statute, "the proper recourse would be to complain to ... the [Legal Services] Corporation," *Harris v. Tower Loan of Miss., Inc.,* 609 F.2d 120, 124 (5th Cir.1980) (citing 45 C.F.R. §§ 1618.1, .3), or to "address[ ] [them] to Congress," *Blum v. Stenson,* 465 U.S. 886, 895–96, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), "not resistance to a fee award," *Harris,* 609 F.2d at 124.

**21.** *See* Pfund, *supra,* 24 Fam. L.Q. at 48 ("[M]any foreign-based left-behind parents are financially unable to pay the sizable retainers expected by counsel in the United States before they will undertake to represent foreign clients and initiate Convention return proceedings on their behalf.").

ent in a clear-cut losing case not to settle early but to protract the court proceeding, thereby locking up scarce time and resources the legal aid counsels could devote to assisting other indigent clients. *See Cuellar v. Joyce,* 603 F.3d 1142, 1143 (9th Cir.2010) (Hague Convention case) ("[D]enying fees in this case would encourage abducting parents to engage in improper delaying tactics whenever the petitioning parent is represented by pro bono counsel."). *See also Dennis v. Chang,* 611 F.2d 1302, 1306 n. 12 (9th Cir.1980) (42 U.S.C. § 1988) ("Legal services organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities to assist in the enforcement of congressionally favored individual rights." (quoting *Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3d Cir.1977))).

## 2. Respondent's Argument That an Award Is Inappropriate Because of Petitioner's Unclean Hands

■ Respondent further asserts that an award under § 11607(b)(3) is clearly inappropriate here because Petitioner has "unclean hands."[22] As evidence of unclean hands, Respondent states that while this action was ongoing, Petitioner initiated a custody suit against him in Mexico, where she represented to a Mexican court that "she did not know of Respondent's whereabouts." Resp't's Resp. 3. Because Respondent was an active party in this action

and in the Texas court action, he continues, she could have easily found him and served him with process in the Mexican suit, but "Petitioner, through lies and deception, was attempting to secure a default judgment." *Id.* at 4. Petitioner responds that she never "sought a default judgment, let alone did so by surreptitious means." Pet'r's Reply 2. To the contrary, she points out, Petitioner notified both Respondent and the Texas state court of her filing in Mexico, and took no action in the Mexican court proceeding pending the resolution of the matter in this action. *Id.* (citing Pet'r's Br. Regarding Stay of State Ct. Proceedings, ECF No. 15). As further evidence of unclean hands, Respondent asserts that Petitioner is a lawful permanent resident (in the sense of immigration status) of the United States, but maintains a habitual residence in Mexico in violation of federal laws (he does not point out what specific laws were violated). Petitioner, adds Respondents, committed perjury when she obtained a Texas driver's license by providing to the relevant authority that she resided at a Texas address. Resp't's Resp. 4.

Whatever can be said about the merits of Respondent's arguments, the Court finds that Petitioner's alleged conduct in the Mexican Court is not related to the matter in this litigation. Further, at trial, Petitioner did not hide, but testified that the address on the driver's license was

---

**22.** Given the statutory mandate that the Court "*shall* order the respondent to pay," § 11607(b)(3) (emphasis added), it is unclear whether equitable principles such as "unclean hands" should apply to *outright* deny any recovery of fees and costs. *See Karpenko v. Leendertz,* 619 F.3d 259, 265 (3d Cir.2010) (declining to apply unclean hands doctrine to deny relief under the Hague Convention, because to so deny would undermine the goals of the Convention); *but see Delgado–Ramirez v. Lopez,* 2011 WL 692213, at *8 (W.D.Tex. Feb. 17, 2011) (Cardone, J.) (declining to

award fees and costs under the Hague Convention in part because both parties have unclean hands). *Cf. McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352, 360–62, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (declining to apply the maxim of unclean hands and create "an absolute rule barring *any* recovery of back pay" under the ADEA, because to do so would undermine the ADEA's objectives (emphasis added)). Nevertheless, the Court does not reach that issue, because it finds that Petitioner does not have unclean hands.

that of Respondent's mother. She obtained the license in early 2010 and the U.S. resident alien card sometime in 2009 [23]—during a harmonious period of the parties' relationship. Her conduct in obtaining them did not play any role giving rise to Respondent's removal and wrongful retention of the child, against which she sought relief from this Court. Accordingly, the Court finds that the doctrine of unclean hands does not operate to bar an award of fees in this case. *See Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933) (The doctrine of unclean hands applies "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. [Courts of equity] do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit."); *Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir.2004) ("[T]he 'unclean hands' doctrine does not empower a court of equity to deny relief for any and all inequitable conduct on the part of the plaintiff. Instead, the inequitable conduct must be related to the plaintiff's cause of action.").

In sum, the Court concludes that Respondent has failed to carry his burden to show that an award of necessary expenses, including costs and legal fees, is "clearly inappropriate" in this case. § 11607(b)(3). Petitioner, therefore, is entitled to an award.

### B. Determination of Appropriate Amount of the Award

Having determined that an award for expenses incurred on behalf of Petitioner is not inappropriate in this case, the Court turns to the issue of whether the amount requested is appropriate. To be awardable, the expenses must be "necessary" to secure the child's return. *Aldinger v. Segler*, 157 Fed.Appx. 317, 318 (1st Cir.2005) (citing, among others, Convention Analysis, 51 Fed.Reg. 10494, 10511 (noting that "necessary expenses" are those expenditures that are incurred "to secure the child's return")). Further, the expenses must be incurred in connection with an action brought under § 11603. § 11607(b)(3); *Koch v. Koch*, 450 F.3d 703, 719 (7th Cir.2006).

### 1. Legal Fee Award

To determine an appropriate legal fee award, federal courts typically use the "lodestar" method in Hague Convention cases. *Neves v. Neves*, 637 F.Supp.2d 322, 339 (W.D.N.C.2009) (listing illustrative cases). *See also Norinder v. Fuentes*, 657 F.3d 526, 536–37 (7th Cir.2011) (noting that the lower court used the lodestar method to calculate attorney's fees and affirming that court's fee award); *Aldinger*, 157 Fed.Appx. at 318 (declining to reach the question of whether the lodestar method is required, but affirming the lower court's fee award made using the lodestar method). The calculation of attorneys' fees under the lodestar method is a two-step process. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). In the first step, the court calculates the lodestar amount by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Thompson v. Connick*, 553 F.3d 836, 867 (5th Cir. 2008), *rev'd on other grounds*, —— U.S. ——, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). In the second step, the court de-

---

**23.** In the June 22, 2012 Memorandum Opinion and Order, the facts and circumstances of Petitioner's obtaining the resident alien card and the license were thoroughly considered by the Court in reaching its conclusion that Mexico is the child's habitual place. *Saldivar*, 879 F.Supp.2d at 620–21.

cides whether the lodestar amount should be adjusted upward or downward based on the circumstances of the case using the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). "[T]he attorneys' fees calculus is a fact-intensive one and its character varies from case to case." *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir.2000).

**(a) Hourly Rates**

The reasonableness of an attorney's hourly rate "depends on the experience and qualifications of the professional." *Trs. of Chi. Plastering Inst. Pension Trust v. Cook Plastering Co.*, 570 F.3d 890, 905 (7th Cir.2009). "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." *Hopwood*, 236 F.3d at 281 (5th Cir.2000) (quotation marks and citation omitted). The relevant market is "the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir.2002) (quoting *Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir.1998) (criticizing the appellant because he "made no effort to show what his services are worth in Houston")). Typically, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there. *Tollett*, 285 F.3d at 368 (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir.1993)).

Finally, a legal aid counsel, though she does not exact a fee from clients, is awarded the same hourly rate that a counsel in the private bar with the same experience and skills as hers commands. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 893–95, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (fee award under 42 U.S.C. § 1988) (upholding use of prevailing market rates to calculate attorney's fee award to Legal Aid Society in civil rights action); *Fairley v. Patterson*, 493 F.2d 598, 606 (5th Cir.1974) (fee award under court's equity power) ("[A]llowable fees and expenses may not be reduced because [the prevailing party's] attorney was employed or funded by a civil rights organization and/or tax exempt foundation or because the attorney does not exact a fee.").

Here, the Court must determine the reasonable hourly rates for two attorneys: Attorney Pamela M. Brown, who works at TRLA's office in Weslaco, Texas, and serves as the lead counsel in this case,[24] and Attorney Javier Saenz, who works at TRLA's office in El Paso, Texas, and serves as the local counsel. Brown's affidavit reflects that she became licensed to practice in 1987. She is the director of the Bi–National Project on Family Violence, a specialized project within TRLA, which addresses issues of international child abductions. In that capacity, in 2011 and 2012, she served as a delegate to the Special Commission on the Hague Convention. Over the last five years, she worked as a lead or supporting counsel in more than twenty-eight cases, most of which involved issues of international child abductions. Based on Brown's experience and qualifications, which doubtless are impressive, Petitioner claims that reasonable hourly rate for Brown is $300. In support, Petitioner submitted an affidavit from Francisco X. Dominguez, an attorney who practices in El Paso. Dominguez affirms that other attorneys in El Paso with fifteen or more years of experience charge between $250 and $450 per hour. The Court notes that according to the State Bar of Texas's most recent survey of attorney hourly rates, the median hourly rate for an El

---

**24.** Brown affirms that Petitioner was referred to her office by the Mexican Consulate in El Paso, Texas. Pet'r's Fee Appl., Ex. 1 (aff. of Pamela M. Brown), at 1.

Paso attorney with over twenty-five years of experience is $233.[25] The Court finds that the reasonable hourly rate for Brown is $250.

With regard to Saenz's billing rate, Petitioner did not submit an affidavit from an El Paso attorney. Saenz became licensed to practice in 2009. Based upon the Court's own knowledge of prevailing market rates for attorneys with similar experience and skills, the Court finds that the reasonable hourly rate for Saenz is $150.[26]

**(b) Number of Hours**

The district court must determine whether the hours claimed were "reasonably expended" on the litigation; that is, whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended. *La. Power & Light Co.*, 50 F.3d at 324; *League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir.1997). The fee applicant bears the burden of establishing the reasonableness of the number of hours expended on the litigation, *Leroy v. City of Hous.*, 906 F.2d 1068, 1079 (5th Cir.1990), and must present adequately documented time records to the court, *Watkins*, 7 F.3d at 457. *See also Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir.1990); ("In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours."). Using this documented

time as a benchmark, the court must exclude hours which, though actually expended, are excessive, duplicative, or inadequately documented. *Watkins*, 7 F.3d at 457; *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir.2011).

Here, Petitioner submitted itemized billing records to establish the number of hours worked by Brown and Saenz in this case. The Court notes that Brown's billing record contains 254 line items, Pet'r's Fee Appl., Ex. 1.C, and Saenz's 29, *id.*, Ex. 2. For ease of referencing specific line items in the course of the Court's discussion below, the Court has added chronological numbers on the page-margin of the billing records, uniquely identifying each of the line items. The records, numbered thusly, are attached to the end of this opinion and order. See Attach. 1 & Attach. 2, *infra*. According to these records, Brown expended a total of 215.2 hours, of which 25.8 hours were not charged, and Saenz worked a total of 20.7 hours, of which 2.4 hours were not charged. Thus, for purposes of fee awards, Petitioner claims 189.4 hours for Brown and 18.3 hours for Saenz. In the following, the Court will discuss the reasonableness of these hours.

**(i) Attorney Brown's Hours**

*(1) Hours Spent for Petitioner's Hague Application*

 Brown spent 7.4 hours in preparing Petitioner's application for the return of the child and for filing that application with the Office of Children's Issues.[27] For

---

**25.** State Bar of Texas Dep't of Research & Analysis, *2009 Hourly Fact Sheet*, http://www.texasbar.com/AM/Template.cfm?Section=Research_and_Analysis&Template=/CM/ContentDisplay.cfm&ContentID=11240 (last visited Aug. 28, 2012).

**26.** *See Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir.2006) ("A district judge may consid-

er his or her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." (internal quotation marks omitted)).

**27.** "Professional Services Rendered" for Pamela M. Brown [hereinafter Brown's Billing Rec], Attach. 1, *infra*, Line Item Nos. 3, 15, 16, 18, 19.

example, on February 16, 2012, she spent 4.5 hours in "[d]rafting Hague Application, reviewing translations, [and] preparing attachment."[28] Subsection 11607(b), which contains the fee-shifting provision, is captioned as "[c]osts incurred in civil actions," in contrast to subsection 11607(a), which is captioned as "administrative costs." 42 U.S.C. § 11607. To be sure, "the heading of a section cannot limit the plain meaning of [the detailed provisions of] the text." *Brotherhood of R.R. Trainmen v. Balt. & Ohio R. Co.*, 331 U.S. 519, 529, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947). In case of subsection (b), however, the text of its detailed provisions, like the subsection's heading, consistently refers to costs incurred in court actions, rather than costs incurred in administrative proceedings before the Central Authority. § 11607(b)(1) ("costs incurred in connection with their petitions"); § 11607(b)(2) ("costs incurred in connection with an action brought under section 11603 of this title"); § 11607(b)(3) ("necessary expenses incurred ... during the course of proceedings in the action"). Accordingly, under § 11607(b)(3), the recoverable necessary expenses are those that are incurred in connection with a court action, not in connection with a proceeding before the Central Authority. *Cf. Webb v. Bd. of Educ. of Dyer Cnty.*, 471 U.S. 234, 244, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) (holding, in the context of fee award under 42 U.S.C. § 1988, the district court may "deny any fees for time spent pursuing optional administrative reme-dies"). Consequently, the Court denies award for 7.4 hours spent for the preparation and filing of Petitioner's Hague application.

*(2) Hours Spent for State Court Proceedings*

■ Brown logged 2.8 hours in connection with Petitioner's litigation efforts in the divorce and custody proceedings before the 388th Judicial District Court of Texas and before a Mexican Court.[29] Both of these matters were on-going while Petitioner's Hague petition was pending before this Court. *Saldivar*, 879 F.Supp.2d at 614–15, 630–31. For example, on April 1, 2012, she spent 0.3 hours on a "telephone call from client re[garding the] status of court proceedings in Mexico and US,"[30] and on the next day, she spent another 0.3 hours in conducting legal research into the "effect of denial of protective order in state court proceedings [and] emergency motion for stay" of those proceedings.[31] Legal fees and cost incurred in divorce and custody proceedings, however, are not expenses incurred in "an action brought under section 11603."[32] § 11607(b)(3). Accordingly, 2.8 hours are excluded.

*(3) Hours Spent for the Preliminary Injunction Hearing*

■ Brown expended 33.3 hours solely in connection with the preliminary injunction hearing held on May 2, 2012, before

28. *Id.*, Line No. 18.

29. *Id.*, Line Item Nos. 66, 70, 71, 73, 74, 106, 130.

30. *Id.*, Line Item No. 70.

31. *Id.*, Line Item No. 73.

32. Other courts, in deciding fee awards under ICARA, have reached the same conclusion. *See, e.g., Flynn v. Borders*, No. 5:06–323–JMH, 2007 WL 862548, at *1 (E.D.Ky. Mar. 20, 2007) (holding any fees related to the parties' state court child support case should not be included in a motion for attorney's fees under 42 U.S.C. § 11607(b)(3)); *Lebiedzinski v. Crane*, No. A03–0248 CV(JKS), 2005 WL 906368, at *3 (D.Alaska Apr. 15, 2005) ("The costs and fees awarded to [the petitioner] will not include expenses associated with the factually related criminal and custodial proceedings.").

the Honorable David Briones, Senior U.S. District Judge.[33] (Following the hearing, this action was transferred to the Court of the undersigned Judge.) In her motion for preliminary injunction filed on March 5, 2012, Petitioner sought, as her primary relief, an immediate order "prohibiting the removal of the child from the jurisdiction of this Court and prohibiting the Respondent from leaving the jurisdiction of this Court" and granting Petitioner "increased and immediate unrestricted access to the child." V. Mot. for Prelim. Inj. 11, ECF No. 2. However, a similar state court order was already in effect at the time she filed her motion and, so far as appears, throughout the pendency of this action. *Saldivar*, 879 F.Supp.2d at 630–32. That order, issued on February 1, 2012, prohibited the parties from removing the child from El Paso County and provided a visitation schedule for Petitioner's access and possession of the child during the pendency of the state court proceedings.[34] Following the hearing on Petitioner's motion for preliminary injunction, Judge Briones issued an order similarly enjoining the parties from removing the child from the jurisdiction of this Court and granting

Petitioner an increased number of visitation hours. Prelim. Inj., ECF No. 12.

▇▇▇ To be sure, were no such state court order in effect, the fees and costs incurred in obtaining the Court's order enjoining any removal of the child from its jurisdiction during the pendency of this action would have been necessary to secure the child's return. Moreover, fees and costs incurred in obtaining a court order providing for increased visitation hours, without more, are not awardable under § 11607, as they are "not necessary to enable the [petitioner] to obtain the return of the child[ ]." *Aldinger*, 157 Fed. Appx. at 318 (citation omitted). Accordingly, the Court concludes that, on the facts of this case, the fees and costs incurred solely in connection with Petitioner's motion for preliminary injunction are not recoverable under § 11607(b)(3). The Court therefore will reduce Petitioner's claimed hours by 33.3.

*(4) Hours Spent for Trial Preparation*

▇▇▇ The billing record also shows that another 52.8 hours were spent on various tasks including preparation for pretrial and trial matters.[35] These hours include

33. Brown's Billing Rec, Line Item Nos. 30, 33–35, 37, 39, 43, 44, 72, 72, 77, 79, 81, 86, 90, 91, 101, 109, 110, 112–20, 122, 124, 135–37, 140–43, 145, 151–156, 168. The aggregate hours do not include 2.0 hours spent in preparation of the preliminary hearing, because the tasks involved in these 2.0 hours are equally applicable toward trial preparation, and therefore they will be discussed separately, *infra*. *Id.*, Line Item Nos. 95 (0.5 hours: "Legal research re: admissibility of evidence of foreign law"), 104 (0.4 hours: "Reviewed review of [sic] transcript of protective order hearing in 388th Dist–El Paso"), 105 (0.6 hours: "Reviewed electronic communications/emails between client and Respondent"), 107 (0.5 hours: "Reviewed transcript of hearing in 388th Dist–El Paso on special appearance and temporary emergency jurisdiction (Petitioner's Exh., 11)").

34. V. Compl./Pet. for Return of Child to Pet'r, Ex. J. ("Order on Motion for Temporary Emergency Jurisdiction and Temporary Order Access and Possession of the Child"), ECF No. 1; *see also* Resp't's List of Proposed Witnesses and Exhibits, Ex. C. ("Additional Orders on Motion for Temporary Emergency Jurisdiction and Temporary Order Access and Possession of the Child," issued on April 18, 2012), ECF No. 18.

35. Brown's Billing Rec, Line Item Nos. 5, 11, 24, 29, 38, 88, 95, 104–05, 107, 132, 149, 157–160, 162–163, 170, 172–73, 177–78, 180–86, 190, 194–95, 197, 199–206, 209, 211, 215, 217–218. These hours do not include 12.5 hours spent in attending trial and taking deposition of a witness. *Id.*, Line Item Nos. 161, 210, 216. The Court will allow these hours *in toto*.

8.7 hours spent in drafting Petitioner's complaint;[36] 12.1 hours for drafting and filing a pretrial brief;[37] 18.5 hours for reviewing materials in preparation of trial;[38] 2.5 hours in preparation of taking a deposition;[39] and 2.4 hours for conducting additional legal research.[40] The Court notes that this case was put on an expedited schedule, with very little discovery. Moreover, in terms of the novelty and difficulty of the questions involved, this is a run of the mill Hague Convention case, "fall[ing] squarely within the heartland of the Hague Convention." *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir.2010). Petitioner concedes as much, as she explains that "Hague cases such as this are generally straightforward," Pet'r's Reply 5, and that the case "raised no significant issues," Pet'r's Suppl. Br. 2. Given Brown's high degree of expertise in Hague Convention cases, lack of complexity in this case, and the abbreviated nature of the proceeding, it appears to the Court that 52.8 hours expended in pretrial and trial matters were excessive and therefore unreasonable.[41] The Court will reduce these hours by 50%. *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir.2000) ("[A] district court may[,] . . . in recognition of the impracticalities of requiring courts to do

an item-by-item accounting[,] reduce the proposed fee by a reasonable percentage." (internal parentheses omitted)). Thus, the claimed hours will be reduced by 26.4.

*(5) Hours Spent on Tasks Performed after the Child's Return*

■ The Court will also disallow 0.6 hours spent by Brown on certain tasks undertaken after the child had been returned to Mexico.[42] *See Aldinger*, 157 Fed.Appx. at 318 (declining to consider billable hours for matters occurring after the return of the children to their habitual residence). For example, on July 3, Brown spent 0.3 hours in reviewing Petitioner's email with attachments to determine whether Respondent violated this Court's order in its June 22, 2012 Memorandum Opinion and Order.[43]

*(6) Travel Time*

■ Petitioner also claims 27.1 hours in travel time for Brown, whose office is located in Weslaco, Texas. Brown spent these hours in making three trips to and from El Paso. The first of these trips took place in April: she arrived in El Paso on April 3 and departed from El Paso on April 5. For this trip, 8.6 hours are claimed.[44] Based upon the activities she

36. *Id.*, Line Item Nos. 11, 24, 29, 38. The 11–page long complaint included attachments, most of which originated from the proceedings before the state court and before the Office of Children's Issues.

37. *Id.*, Line Item Nos. 190, 202, 206.

38. *Id.*, Line Item Nos. 197, 204, 209, 211, 215.

39. *Id.*, Line Item Nos. 132, 157–59.

40. *Id.*, Line Item Nos. 5, 95, 210, 218.

41. *See Conservation Law Found. of New England, Inc. v. Watt*, 654 F.Supp. 706, 708 (D.Mass.1984) (reducing fee award because attorneys' "experience and background would

necessarily mean that [their] efforts in this case started from a basic familiarity with environmental law and not from scratch"). *See also Trs. of Chi. Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 905 (7th Cir.2009) ("It is not at all unusual for a court to determine that some aspects of an attorney's work were not fruitful, were unnecessary, or merited less time than the attorney devoted to them, and to deny compensation for those portions of the attorney's work.").

42. Brown's Billing Rec, Line Item Nos. 235–36.

43. *Id.*, Line Item No. 236.

44. *Id.*, Line Item Nos. 75, 84.

engaged in during that trip,[45] the Court concludes that the trip was made to prepare for the preliminary injunction hearing. As discussed *supra,* expenses incurred for preliminary injunction hearing were unnecessary. Accordingly, the claimed travel hours for the April trip will be excluded. However, the remaining 18.5 travel hours billed for making the other two trips were necessary.[46]

■■■ While travel time is not *per se* excludable, non-working travel time is often compensated at a discounted hourly rate. *In re Babcock & Wilcox Co.,* 526 F.3d 824, 828–29 (5th Cir.2008) *(per curiam)* (holding, in a bankruptcy case, the bankruptcy court did not abuse its discretion in awarding attorney's fees at half the hourly rate for time spent traveling but not working); *Watkins v. Fordice,* 7 F.3d 453, 459 (5th Cir.1993) (holding, in the context of Voting Rights Act, the court did not abuse its discretion when it discounted the hourly rate billed for travel time). Accordingly, the Court will allow fees for 18.5 hours in travel time at half the approved hourly rate. Stated another way, the Court will reduce the necessary travel hours by 50%. Thus, another 9.3 hours will be excluded from the total hours claimed.

### (7) Fees for Fees

■■■ Petitioner claims fees for 33.3 hours spent in preparation of her application for attorney's fees and costs—commonly known as "fees for fees." In the Fifth Circuit, "[i]t is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation." *Cruz v. Hauck,* 762 F.2d 1230, 1233 (5th Cir. 1985) (citations omitted). The Court notes that Petitioner's fee application is not an ordinary one, simply tallying up reasonable hours. In his answer and at trial, Respondent staunchly argued that Petitioner should not be able to recoup attorneys' fees and costs, because she is represented·for free by an attorney from a legal aid entity. Therefore, it was necessary for Brown to expend additional time to respond to Respondent's argument; to that extent, Brown has prepared a detailed brief, supported by authorities.[47] Nevertheless, the Court believes that 33.3 hours is excessive, and thus, the Court will award fees for fees for 12.0 hours.

### (8) Hours Inadequately Documented

■■■ The Court will subtract additional 7.9 hours for inadequate documentation. *See La. Power & Light Co.,* 50 F.3d at 324 ("[A] district court may reduce the number of hours awarded if the documentation is *vague* or *incomplete.*" (emphasis in original)). For some of these hours,[48] the bill-

---

**45.** *Id.,* Line Item Nos. 81 (April 4, 2012: "Prepared for pre-trial hearing meeting with client for her preliminary injunction hearing; document review"—3.5 hours).

**46.** Brown made a second trip on April 29 to El Paso, returning to Weslaco on May 3. *Id.,* Line Item Nos. 144, 148, 166. Although during this trip Brown attended the preliminary injunction hearing in this action, she also took deposition of a witness (Veronica S. Torres). Because the deposition testimony was introduced at trial, the travel time spent in making the trip was necessary. During her final trip to El Paso, she appeared at trial before this Court. *Id.,* Line Item No. 208. The Court notes that for her final trip, Brown

does not itemize hours for traveling from El Paso back to Weslaco; as such, those hours are deemed as not-charged.

**47.** *Cf. Am. Petroleum Inst. v. EPA,* 72 F.3d 907, 918 (D.C.Cir.1996) (declining to award the full amount of claimed fees for preparing fee motion, reasoning that "petitioners' 'novel' argument, whether a non-profit organization with for-profit entities as members can recover attorneys' fees ... was *a small part of the petition, appearing only in a footnote in their initial motion.*" (emphasis added)).

**48.** Brown's Billing Rec., Line Item Nos. 17, 27, 76, 78, 196, 297.

ing record provides insufficient information for the Court to determine whether those hours were reasonably expended. For example, one entry lists 0.1 hour for "[r]eview[ing] e-mail from client," but provides no elaboration of whether the subject of the email related to Petitioner's case before this Court.[49] Additionally, 6.8 hours were spent in Petitioner's litigation efforts *both* in the state court and in this Court.[50] For example, on March 8, Brown worked 3.0 hours, conducting legal research into "evidentiary proof of Hague Convention elements; stay of custody proceedings, protective orders."[51] Because, as discussed, hours expended for state court proceedings are not awardable and the Court is unable to determine what portion of these hours accounts for Petitioner's federal action, the Court declines to award fees for these hours.

*(9) Summary of Hours Spent by Attorney Brown*

In sum, taking into account the above-mentioned reductions, the Court finds that 71.8 hours expended by Brown are reasonable.

**(ii) Attorney Saenz's Hours**

■ 'If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted.'" *Walker v. United*

*States HUD*, 99 F.3d 761, 768 (5th Cir. 1996) (quoting *Johnson*, 488 F.2d at 717).

Attorney Saenz billed for 18.3 hours. Some of the entries in his billing record represent duplicative tasks that were performed by Brown.[52] For example, on February 7, 2012, Saenz spent 1.0 hour in conferencing with Petitioner regarding facts of her case and advising her about the process and what would come next.[53] Brown also spent equal amount of time on the same day on the same task, which the Court has allowed.[54] Some of the entries involve administrative tasks,[55] and others involve Saenz's reviewing of emails from and conversing on phone with Brown.[56] Moreover, he spent 1.0 hours for the May 2, 2012 hearing on Petitioner's motion for preliminary injunction;[57] as mentioned above, the Court has found unnecessary the hours expended for the motion. The Court will disallow all these hours.

■ In sum, the Court finds that 8.0 hours expended by Saenz are reasonable. Saenz spent these hours in attending the first day of trial on June 8.[58]

**(c) Lodestar Summary**

■ To arrive at the lodestar amount, the Court multiplies the reasonable hourly rate by the number of hours reasonably expended. *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir.2010). For Attorney Brown, the Court multiplies 71.8 hours by the rate of $250, to arrive at the lodestar amount of $17,950, and for Attor-

---

**49.** *Id.*, Line Item No. 76.

**50.** *Id.*, Line Item Nos. 4, 53, 59.

**51.** *Id.*, Line Item No. 53.

**52.** *E.g.*, "Professional Services Rendered" for Javier Saenz [hereinafter Saenz's Billing Rec.], Attach. 2, *infra*, Line Item Nos. 1, 6, 7, 8.

**53.** *Id.*, Line Item No. 1.

**54.** Brown's Billing Rec, Line Item No. 1.

**55.** *E.g.*, Saenz's Billing Rec, Line Item Nos. 10, 29

**56.** *E.g.*, *id.*, Line Item Nos. 2, 4, 5, 13.

**57.** *Id.*, Line Item No. 12.

**58.** *Id.*, Line Item Nos. 19.

ney Saenz, it multiplies 8.0 hours by the rate of $150 .to arrive at the lodestar amount of $1,200. The total lodestar amount therefore is $19,150.

#### (d) Adjustment of Lodestar

#### (i) *Johnson* Adjustment

 Once a court has calculated the lodestar, it may adjust upward or downward after considering following *Johnson* factors:

(1) the time and labor required to represent the client or clients;

(2) the novelty and difficulty of the issues in the case;

(3) the skill required to perform the legal services properly;

(4) the preclusion of other employment by the attorney;

(5) the customary fee charged for those services in the relevant community;

(6) whether the fee is fixed or contingent;

(7) the time limitations imposed by the client or circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorney;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Johnson,* 488 F.2d at 717–19. Of these factors, the court should give special heed to factors (1), (5), (8), and (9). *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 800 (5th Cir.2006). "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Id.; see also Jason D.W. v. Hous. Indep. School Dist.,* 158 F.3d 205, 209 (5th Cir.1998) (discussing the *Johnson* factors and noting that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted").

 The Court determines that adjustment due to *Johnson* factors is not warranted. The factors that would warrant an upward or downward adjustment have already been considered when the Court made its determination regarding the reasonable hours expended and the hourly rates. For example, factors (1), (2), (6), and (9) are all factors that are accounted for in the Court's determination of the attorneys' hourly rates or in the determination of hours reasonably expended. Moreover, the approved hourly rates adequately compensate counsels for the level of skill required ·to perform the legal services in this case (factor (5)). The expedited nature of this case was not so onerous as to justify an upward adjustment (factor (7)). Indeed, the Court set the trial date with ample notice and in accordance with the parties' preference. The Court also did away with traditional discovery to expedite the matter. Order, ECF No. 14. The case was tried within approximately three months of its filing, and as such, the lodestar adequately compensates for factor (8). Finally, fee awards vary greatly in Hague Convention cases (factor (12)). *Compare Antunez–Fernandes v. Connors–Fernandes,* 259 F.Supp.2d 800, 817 (N.D.Iowa 2003) (awarding $7,531.50 for legal services by *pro bono* attorney), *with Wasniewski v. Grzelak–Johannsen,* 549 F.Supp.2d 965, 980 (N.D.Ohio 2008) (awarding $114,958.25 in attorneys' fees for services by *pro bono* attorneys). After all, the lodestar "is presumptively reasonable and should be modified only in exceptional cases." *Watkins,* 7 F.3d at 457 (citing *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)).

#### (ii) Adjustment for Respondent's Straitened Financial Condition

 Respondent states that he lacks financial means to pay the amount of fees requested by Petitioner. The court may reduce a fee award in a Hague Convention case, if it prevents the respondent-parent with straitened financial condition from caring for his child. *Rydder v. Rydder*, 49 F.3d 369, 373–74 (8th Cir.1995); *Whallon v. Lynn*, 356 F.3d 138, 139–40 (1st Cir.2004); *see also Norinder v. Fuentes*, 657 F.3d 526, 536–37 (7th Cir. 2011) (reviewing cases including *Rydder* and *Whallon*). *Cf. Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 239 (5th Cir. 1990) (stating in the context of 42 U.S.C. § 1988 that the financial condition of a non-prevailing party is a "factor that, although not controlling, a court should consider when fixing the amount of [a fee] award"). Such reduction is equitable in nature, *Rydder*, 49 F.3d at 374, and the Court has "broad discretion," *Whallon*, 356 F.3d at 140. In determining whether and to what extent a fee award should be reduced on the basis of the respondent's financial situation, the Court inquires "whether respondent has clearly established that it is likely that h[is] child will be significantly adversely affected by the court's award." *Id.*

 In his response to Petitioner's fee application, Respondent asserts: "The evidence adduced at trial indicated that Respondent earned on average no more than about $12 per hour in the jobs he held, such that it would be clear economic hardship for him to pay the more than $60,000 in attorney's fees demanded by Petitioner." Resp't's Resp. 5. Because Respondent did not submit any evidence in support this assertion, the Court ordered him to submit a supplemental brief supported by an affidavit explaining his financial condition.[59] Respondent filed such an affidavit. Resp't's Suppl. Br., Ex A. (Aff. of Erick Rodela). In it, Respondent affirms that he was fired from his job on August 3, 2012, and is currently unemployed. *Id.* ¶ 1. At his last job, he earned $2,000 per month. *Id.* He also states that he has over $50,000 in credit card debt and that he has no bank accounts, stocks, bonds, or other assets. *Id.* ¶ 3. He further affirms that he owns no real estate, but for a half interest in the house in Mexico where Petitioner and the child currently reside. *Id.*

Petitioner responded by filing her own affidavit, to which she attached a copy of a divorce agreement and judgment by a Mexican court. Pet'r's Suppl. Br., Ex. A (Decl. of Sonia Acosta Saldivar), Ex. B (Divorce Agreement & J.). (The Mexican court judgment was entered on July 10, 2012, a few days after the child was returned to Mexico pursuant to this Court's order.) She opines that Respondent has the capacity to get another job. She affirms that Respondent has two college degrees and has always been employed during the last sixteen years. *Id.*, Ex. A, ¶¶ 2–3. Moreover, she states, and the divorce agreement shows, that the parties' agreed to sell their house in Mexico and to divide equally the proceeds from the sale, when the house is actually sold. *Id.*, Ex. A, ¶¶ 6–7. She opines that Respondent's share of the sale proceeds will amount to nearly $23,000. *Id.*, Ex. A, ¶ 8.

Upon due consideration, the Court finds that Respondent's financial condition is straitened, particularly in light of the recent termination from his work. This is not to say that his straitened condition is a permanent one, for given his past work history, it is not unreasonable to assume

---

**59.** *See Alizadeh*, 910 F.2d at 239 (instructing the district court, on remand, to take additional evidence, affidavits, or the like, in order to determine the fee amount in light of the non-prevailing party's limited financial resources and inability to pay).

that he will be employed again soon. *See Alizadeh*, 910 F.2d at 239 (suggesting that the Court should consider the losing party's "present *or prospective* ability ... to pay" an attorney's fee award (emphasis added)). Further, since the parties' separation in 2010, Respondent has provided monthly child support (though parties dispute the amount thereof) and paid for D.I.R.A.'s cost of education. Pursuant to the parties' divorce agreement, Respondent is obligated to pay child support for D.I.R.A. There is nothing to indicate that he would not continue to provide for the child. Therefore, a large fee award in this case would undermine "the ability of [the] respondent to care for [his] child." *Whallon*, 356 F.3d at 140.

Accordingly, the Court is of the opinion that a reduction of the above-calculated fee award is warranted. However, the Court declines to reduce the fee award to an amount so little as to effectively result in a denial of all fees. To do so would contravene the statutorily mandated award of attorneys' fees and thwart the legislative purpose of deterring future violations of the Hague Convention. Accordingly, the Court will reduce the above-calculated fee award by 55%. A reduction on the account of straitened financial condition, however, will not be applied to litigation costs and out-of-pocket expenses, which are discussed *infra*. *See Rydder*, 49 F.3d at 374 (reducing fee award of $18,487 by 46%, but leaving undisturbed the award of other necessary expenses in the amount of $9,667.40); *Whallon*, 356 F.3d at 139 (reducing fee award of $20,701.50 by 25%, but leaving undisturbed the award of other

necessary expenses in the amount of $6,929.78).

Accordingly, the Court will order Respondent to pay attorneys' fees in the amount of $8,617.50.

### 2. Litigation Costs

■■■■ Petitioner requests an award of $11,718.16 as litigation costs incurred on her behalf by TRLA. "[F]ederal courts may only award those costs articulated in [28 U.S.C. § ] 1920 absent explicit statutory or contractual authorization to the contrary." *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir.2001); *see also Gaddis v. United States*, 381 F.3d 444, 451 (5th Cir.2004) (28 U.S.C. §§ 1920 and 1821 "define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further." (quotation marks and citation omitted)). Here, Petitioner seeks costs pursuant to ICARA's fee-shifting provision. *Cf. Mota*, 261 F.3d at 529 (turning to Title VII's fee-shifting provision which provides for taxation of additional types of costs, not found in § 1920, such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs). Accordingly, the Court must inquire whether the claimed costs are "necessary expenses" and therefore awardable under § 11607(b)(3). Of course, costs taxable under § 1920 [60] are *per se* awardable under § 11607(b)(3).

■■■ Here, the Court will allow the following costs as necessary expenses: fees for filing the action ($350.00), fees for service of summon ($91.30), and compensation

---

**60.** Under § 1920, a court may tax the following costs: fees of the clerk and marshal; fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; fees and disbursements for printing and witnesses; fees for exemplification and copies of papers necessarily obtained for use in the case; docket fees; compensation of court-appointed experts, interpreters, and special interpretation services. 28 U.S.C. § 1920; *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir.2001).

of interpreter used at trial ($780.00). Pet'r's Fee Appl., Ex. 7 at 1. *See* § 1920(1) (fees of the clerk and marshal): § 1920(6) (compensation of interpreters).

Petitioner itemizes $65.56 for freight/postage expenses, without explaining for what purposes the freight was used. Pet'r's Fee Appl., Ex. 7 at 3. Because the Court is unable to determine their necessity without further elaboration, it will disallow this amount.

Petitioner seeks $1075 for translation services. *Id.*, Ex. 7, at 13. Some of these costs were incurred for translating into English various declarations or affidavits by Mexican witnesses, and the child's school and medical records from Mexico. The documents were submitted into evidence at trial in support of Petitioner's argument that Mexico is the child's habitual residence. The balance of the costs claimed for translation services was incurred for translating relevant Mexican civil codes and *Jurisprudencia,* which were used at trial to establish Petitioner's custody rights under Mexican law. Accordingly, these costs were necessary under § 11607(b)(3), and therefore the Court will allow *in toto* the amount sought for translation services.

Petitioner further itemizes $384 as transcript fees. Pet'r's Fee Appl., Ex. 7, at 3. So far as appears, these costs were incurred in obtaining transcripts of various hearings held before the state court. Because Petitioner used some of these transcripts at trial (for example, on the second day of trial, a portion of these transcripts was used in cross-examining Respondent), the Court deems these costs as necessary. *See* 28 U.S.C. § 1920(2) ("Fees for . . .

transcripts necessarily obtained for use in the case.").

Petitioner also seeks to levy $401.50 as costs for a court reporter and $150 for a videographer. Pet'r's Fee Appl., Ex. 7 at 3. As best as the Court can decipher, these costs were incurred in deposing Veronica S. Torres. Because the deposition testimony was used at trial, and the Court relied upon it to some extent, the Court will allow the costs for the court reporter, but not the costs for videographer. *Cf. Mota,* 261 F.3d at 529 (concluding the district court erred in taxing the cost of videotaped depositions).

Petitioner also requests reimbursement of travel expenses incurred for Browns trips between Weslaco and El Paso. Reasonable transportation and lodging costs incurred by an out-of-town attorney are awardable under § 11607(b)(3). *Cuellar v. Joyce,* 603 F.3d 1142, 1143 (9th Cir.2010); *see also Koch v. Koch,* 450 F.3d 703, 719 (7th Cir.2006) (awarding "transportation costs" under § 11607(b)(3)). Petitioner requests $3592.10 for air fare, car rental fees, hotel costs, parking fees, mileage fees, and per diems.[61] Pet'r's Fee Appl., Ex. 7c. Of this amount, Brown spent $748 for a trip made between April 29 and May 3. The Court will award this amount for the same reason it has allowed travel time for this trip. See *supra* note 46. The remaining air travel expenses are billed for two trips Brown made to attend trial, held on June 8 (Friday) and June 11 (Monday). She traveled to El Paso on June 6 and left El Paso on June 9; she then returned to El Paso on June 10 and left on June 12. The Court finds that making two trips to attend trial was unnecessary. According-

---

**61.** The Court notes that various components of Brown's travel expenses mathematically add up to a number that is greater than the final amount billed. This might have been the result of an error; on the other hand, Petitioner might have intended not to charge some of the component amounts. Be that as it may, because no explanation is given, the Court will work with the amounts presented.

ly, the Court will not award the air fare ($831.50) for the second trip. Further, the mileage fees and per diems in the amount of $614.60 will be disallowed. Thus, a total of $1446.10 will be disallowed, resulting in awardable travel expenses in the amount of $2146.

■ Finally, Petitioner requests $4828.70 in expert fees for services rendered by Mariano Nunez Arreola. An attorney licensed to practice law in Mexico, Arreola works for TRLA as its foreign legal advisor and served in this action as an expert on Mexican law. He provided his expert opinions on the issue of whether Petitioner's custody rights under Mexican law are "rights of custody" under the Convention. Hague Convention, art. 3. His services included researching the Federal Civil Code of Mexico, the Chihuahua Civil Code, and Mexican *Jurisprudencia*, interpreting the relevant law, and preparing two affidavits. Such services were clearly necessary to establish Petitioner's entitlement to the return remedy, as contemplated by the Convention. Perez–Vera Report ¶ 101, at 456–57 ("[P]roof of the substantive law of the State of the child's habitual residence may be established by . . . affidavits . . . from . . . an attorney, solicitor, or barrister."). Accordingly, costs incurred for services rendered by Arreola

are generally awardable under § 11607(b)(3). *See Norinder v. Fuentes,* 657 F.3d 526, 536–37 (7th Cir.2011) (affirming lower court's award of expert fees in a Hague Convention case).

The Court must, however, scrutinize claimed expert fees for reasonableness and necessity. According to his invoice attached to Petitioner's fee application, Arreola spent 1.8 hours in providing consultations to Brown.[62] These hours were also itemized by Brown as part of her fees,[63] and the Court has allowed them. Accordingly, the Court will disallow as duplicative these hours billed by Arreola.[64] The Court will also disallow 5.0 hours Arreola billed as time spent on preparing the invoice itemizing costs of his services.[65] Moreover, because the Court has determined that in this case, expenses incurred for purposes of the hearing on Petitioner's motion for preliminary injunction were not necessary, *see* Part II.B.1(b)(i)(3), *supra,* the Court will disallow 2.0 hours Arreola spent for "[a]ttend[ing] Preliminary Injunction Hearing in Anticipation of Presenting Testimony" and $748.70 billed as travel expenses incurred for his trip to El Paso to attend the hearing.[66]

Arreola's bill thus reduces to the hours he spent in preparing two affidavits—one of which was submitted as part of Petition-

---

**62.** Pet'r's Fee Appl., Ex. 7a, at ECF page nos. 8–9 ("Expert Legal Consultant Services" by Mariano Nunez Arreola).

**63.** Brown's Billing Rec., Line Item Nos. 14, 72, 122, 141.

**64.** *See Freier v. Freier,* 985 F.Supp. 710, 714 (E.D.Mich.1997) (declining in a Hague Convention case to award costs of consultation by an expert on Israeli law because neither § 11607(b)(3), nor § 1920 allow award of such costs).

**65.** Pet'r's Fee Appl., Ex. 7a, at ECF page no. 8. The costs for these hours are similar to fees for fees billed by attorneys, *see* Part II.

B.1(b)(i)(7), *supra,* which are awarded on policy grounds. One such policy is that denying fees for fees would "dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees." *Gagne v. Maher,* 594 F.2d 336, 344 (2d Cir.1979), *cited with approval in Johnson v. Miss.,* 606 F.2d 635, 638 (5th Cir.1979). No such policy is implicated in denying similar fees billed by an expert witness, like Arreola, who, though is licensed to practice law in Mexico, did not appear as an attorney in this action.

**66.** Pet'r's Fee Appl., Ex. 7a, at ECF page nos. 8–9. The Court notes that at the hearing, Arreola did not testify after all.

er's complaint and the other was submitted in response to this Court's order for supplementary brief. Arreola spent a total of 32.0 hours, of which 17.0 hours were spent in conducting research and 15.0 hours in drafting the affidavits.[67] At $100 hourly rate, as requested by Arreola, those hours amount to $3200 in expert fees. The Court is of the opinion that such fees are excessive,[68] and therefore it will reduce this amount by half, awarding expert fees in the amount of $1600.

In summary, the Court will order Respondent to pay necessary litigation costs in the amount of $6,827.80.

### 3. Petitioner's Out–of–Pocket Expenses

▮ Petitioner asks the Court to order Respondent to pay $1398.38 for expenses she incurred, in her words, "for many trips that I did between Ciudad Juarez and El Paso to attend the visits with my son that were directed by the court and to attend hearings in court." Pet'r's Suppl. Br., Ex. A (Decl. of Sonia Acosta Saldivar), at 2. The requested amount includes money she spent in paying bridge tolls at the international bridge between the United States and Mexico, as well as in purchasing gasoline, car insurance (while driving in the United States), and meals for herself and the child during her visits to El Paso. The claimed expenses also include the cost of buying a cellphone for the child and the payment of related phone bills, to maintain contact with the child while the case was pending.

The Court's inspection of Petitioner's invoices reveal that a lion share of the itemized expenses were spent during her trips to visit the child under the visitation schedules provided by either this Court (Judge Briones) or the state court. These expenses are not recoverable under § 11607(b)(3) because "those visits were not necessary to enable [Petitioner] to obtain the return of the child[ ]." *Aldinger*, 157 Fed.Appx. at 318 (stating that the costs Petitioner and his parents incurred in visiting the children while they were wrongfully retained in the United States are not awardable). Likewise, the cost of providing the cellphone to the child and purchasing meals are not recompensable. Other itemized expenses were incurred during Petitioner's visits to El Paso to attend "hearings in court." Pet'r's Suppl. Br., Ex. A (Decl. of Sonia Acosta Saldivar), at 2. Although Petitioner does not identify the hearings, the Court assumes that she refers to the hearings before the state court in the parties' divorce and custody proceedings, and the hearing before the federal court on her motion for preliminary injunction. As discussed in Part II.B.1(b)(i)(2), (3), *supra*, the expenses incurred in attending these hearings are not awardable under § 11607(b)(3).

▮ The Court will, however, award the expenses Petitioner incurred in attending trial before this Court and in returning the child to Mexico upon Respondent's surrender of the child to her custody and possession in El Paso. § 11607(b)(3) ("necessary expenses incurred by . . . the petitioner, including . . . transportation costs

---

67. *Id.* at ECF page no. 8.

68. The Court reaches this conclusion in light of other items listed in Arreola's invoice. For example, Arreola claims to have spent 5.0 hours in preparing for documents in support of Petitioner's fee application. *Id.* These documents include a 1–1/2–page invoice itemizing hours he spent, his curriculum vitae, and

a 3–page affidavit, which essentially describes the contents of his curriculum vitae. It is difficult to fathom that such endeavor would take more than 2 hours—60% less than 5.0 hours he claimed (assuming that Arreola's curriculum vitae was already prepared in the past for other purposes). This suggests that the hours Arreola claims to have spent on the affidavits are likewise excessive.

related to the return of the child"). Accordingly, the Court will award $35.00 for car insurance fees, $55.33 for buying gasoline, and $5.00 for paying bridge tolls.[69] The Court moreover notes that at trial on June 8, Maria del Rocio Acosta Saldivar, Petitioner's sister who lives in Mexico, appeared as a witness and testified. The Court will award additional $120 for Rocio's attendance as well as Petitioner's attendance at trial. 28 U.S.C. § 1821(b) ("A witness shall be paid an attendance fee of $40 per day for each day's attendance."). All told, the Court will award a total of $210.33 to Petitioner.

### 4. Award Summary

In summary, the Court will award necessary expenses incurred in this action as follows: [70]

| | |
|---|---|
| Attorneys' fees for Brown and Saenz: | $ 8,617.50 |
| Litigation costs: | $ 6,827.80 |
| Total of attorneys' fees and litigation costs: | $15,445.30 |
| Petitioner's out-of-pocket expenses: | $ 210.33 |

### III. CONCLUSION

For the foregoing reasons, the Court enters the following orders:

**IT IS HEREBY ORDERED** that Petitioner Sonia Eledia Acosta Saldivar's "Application for Reasonable Attorneys' Fees and Costs and Brief in Support" (ECF No. 35) is **GRANTED IN PART,** insofar as the Court directs Respondent to pay in accordance with the orders stated below, and **DENIED IN PART,** insofar as the Court reduces the amount requested by Petitioner consistent with the foregoing discussion.

**IT IS FURTHER ORDERED** that Respondent Erick Rodela **SHALL PAY $15,445.30 to Texas RioGrande Legal Aid, Inc.,** for attorneys' fees and litigation costs incurred by Texas RioGrande Legal Aid, Inc. in this action on behalf of Petitioner Sonia Eledia Acosta Saldivar.[71]

**IT IS FURTHER ORDERED** that Respondent Erick Rodela **SHALL PAY $210.33 to Petitioner Sonia Eledia Acosta Saldivar** for expenses incurred by her in this action.

**IT IS FINALLY ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

### ATTACHMENT 1:

#### Attorney Pamela M. Brown's Billing Record

69. So far as the Court understands from Petitioner's invoice, these expenses were incurred during the dates relevant for attending trial and returning the child.

70. The Court declines to award postjudgment interests due to Respondent's financial condition.

71. *See Harris v. Tower Loan of Miss., Inc.,* 609 F.2d 120, 124 (5th Cir.1980) (stating in an action brought under the Truth in Lending Act where the plaintiff was represented by a legal aid society that the losing party is to pay attorney's fee award *directly* to the society (citing *Miller v. Carson,* 563 F.2d 741, 756 (5th Cir.1977) (awarding attorney's fees directly to counsel under 42 U.S.C. § 1988))); *Burnett v. Ala Moana Pawn Shop,* 3 F.3d 1261, 1263 (9th Cir.1993) (same). *See also Hairston v. R & R Apartments,* 510 F.2d 1090, 1093 (7th Cir.1975) (stating "to avoid any windfall" by the prevailing plaintiff who received free legal services from a private legal services organization in an action under the Fair Housing Act, the fee award pursuant to 42 U.S.C. § 3612 "should go *directly* to the organization providing the services" (emphasis added)).

See also Pet'r's Appl. for Reasonable
Att'ys' Fees & Costs and Br. in
Supp., Ex. 1.C, ECF No. 35

## PROFESSIONAL SERVICES
## RENDERED

*Acosta–Saldivar v. Rodela,* No.
3:12–CV–00076–DB For
Pamela M. Brown

| | Date | Services Performed | Staff | Hours | Hr Rate | Amount |
|---|---|---|---|---|---|---|
| 1 | 02/07/2012 | Telephone call from client re her case and available remedies for wrongful retention of her son in El Paso. | Pamela M. Brown | 1.0 | 300.00 | 300.00 |
| 2 | 02/07/2012 | Telephone call to local counsel Javier Saenz re client's completion of the Hague Application form | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 3 | 02/07/2012 | Reviewed signed and completed the Hague Application for Return received from client | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 4 | 02/12/2012 | Drafted Original Petition for Return pleadings, motion to stay state court proceedings, proposed order on stay; research available potential provisional remedies and need for same | Pamela M. Brown | 3.5 | 300.00 | 1050.00 |
| 5 | 02/12/2012 | Legal research re: Hague Convention decisions (state and federal, including 2 from W.D.-Texas (El Paso Div.) | Pamela M. Brown | 1.0 | 300.00 | 300.00 |
| 6 | 02/13/2012 | Telephone call to client to clarify facts regarding habitual residence issues for Hague petition | Pamela M. Brown | 0.8 | 300.00 | 240.00 |
| 7 | 02/13/2012 | Draft and send email to to client regarding fact statement | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 8 | 02/13/2012 | Fact Investigation: reviewing documents sent by client, school and medical records establishing child's habitual residence in Mexico | Pamela M. Brown | 0.6 | 300.00 | 180.00 |
| 9 | 02/13/2012 | Conference with Maria Jose Vallejo re. translation of documents provided by client | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 10 | 02/13/2012 | Draft and send email to to Lic. Mariano Nunez, Mexican legal expert re Chihuahua Civil Code and rights of custody for separated parents | Pamela M. Brown | 0.1 | 300.00 | 30.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 11 | 02/13/2012 | Drafted Verified Petition | Pamela M. Brown | 1.0 | 300.00 | 300.00 |
| 12 | 02/13/2012 | Legal research re: local rules for W.D.Tex–El Paso Div. | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 13 | 02/13/2012 | Telephone call from State Department Office of Children's Issues staff regarding submission of Client's Hague application | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 14 | 02/15/2012 | Conference with Mariano Nunez re his initial research, interpretation, and translation of Chihuahua Civil Code provisions on patria potestad and custody rights | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 15 | 02/15/2012 | Drafted Hague Application, including facts and circumstances statement and legal justifications | Pamela M. Brown | 2.4 | 300.00 | 720.00 |
| 16 | 02/15/2012 | Draft and send email to to client with copy of Hague Application and declaration for her review | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 17 | 02/16/2012 | Prepared significant litigation approval form | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 18 | 02/16/2012 | Drafted final Hague Application, reviewing translations, preparing attachments. | Pamela M. Brown | 4.5 | 300.00 | 1350.00 |
| 19 | 02/16/2012 | Reviewed e-mail from client with corrections to facts and circumstances. | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 20 | 02/16/2012 | Legal research re: Reviewing National Center for Missing & Exploited Children Hague Litigation Manual for evaluation on necessity of a pick up order or other remedies | Pamela M. Brown | 0.4 | 300.00 | N/C |
| 21 | 2102/17/2012 | Conference with colleague Jennifer Harbury re her edits to Complaint, other possible remedies, Injunction requirements, Belo orders. | Pamela M. Brown | 0.5 | 300.00 | N/C |
| 22 | 02/17/2012 | Draft and send email to to client regarding potential fact witnesses on habitual residence of child. | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 23 | 02/18/2012 | Legal research re: rules regarding exhibits to be attached to Complaint | Pamela M. Brown | 0.4 | 300.00 | N/C |
| 24 | 02/18/2012 | Drafted Verifed Complaiant/Petition and attached exhibits | Pamela M. Brown | 2.0 | 300.00 | 600.00 |
| 25 | 02/18/2012 | Draft and send email to to client re final review before filing | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 26 | 02/22/2012 | Reviewed e-mail from client regarding her affidavit | Pamela M. Brown | 0.1 | 300.00 | 30.00 |

| 27 | 02/22/2012 | Reviewed client's draft affidavit | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
|----|-----------|-----------------------------------|-----------------|-----|--------|-------|
| 28 | 02/22/2012 | Draft and send email to to client re exhibits and witness statements | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 29 | 02/22/2012 | Drafted Verified Complaint/Petition; review local rules, W.D.-Tex. electronic filing rules | Pamela M. Brown | 4.5 | 300.00 | 1350.00 |
| 30 | 02/23/2012 | Drafted [Plaintiffs] Verified Motion for Preliminary Injunction Prohibiting Respondent and Child from Leaving the Jurisdiction of this Court, Safeguarding Child's Travel Documents, Granting Petitioner Immediate and Unrestricted Access to the Child | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 31 | 02/23/2012 | Reviewed e-mail from client with her executed affidavit | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 32 | 02/23/2012 | Telephone call to Javier Saenz regarding copy of state court order | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 33 | 02/23/2012 | Reviewed Order of 388th Dist.El Paso re temporary emergency jurisdiction, to include as Exhibit | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 34 | 02/24/2012 | Drafted [Plaintiff's] Verified Motion for Preliminary Injunction Prohibiting Respondent and Child from Leaving the Jurisdiction of this Court, Safeguarding Child's Travel Documents, Granting Petitioner Immediate and Unrestricted Access to the Child | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 35 | 02/24/2012 | Draft and send email to/from client re visits with child, logistics of filing and hearing, signing of Complaint, additional documents and witness affidavits | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 36 | 02/24/2012 | Reviewed translated affidavit in support of Hague Application | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 37 | 02/24/2012 | Reviewed translations of supporting exhibits | Pamela M. Brown | 1.0 | 300.00 | 300.00 |
| 38 | 02/24/2012 | Drafted final Verified Complaint/Petition for Return with Exhibits | Pamela M. Brown | 1.2 | 300.00 | 360.00 |
| 39 | 03/02/2012 | Drafted [Plaintiffs] Verified Motion for Preliminary Injunction Prohibiting Respondent and Child from Leaving the Jurisdiction of this Court, Safeguarding Child's Travel Documents, Granting Petitioner Immediate and | Pamela M. Brown | 1.2 | 300.00 | 360.00 |

Unrestricted Access to the Child

| 40 | 03/02/2012 | Reviewed e-mail from client | Pamela M. Brown | 0.1 | 300.00 | N/C |
|----|------------|------------------------------|-----------------|-----|--------|-----|
| 41 | 03/02/2012 | Draft and send email to to client to arrange signing of Verfied Complaint/Petition | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 42 | 03/02/2012 | Conference with secretary re emailing documents to clien for hers signature; organizing exhibits | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 43 | 03/02/2012 | Drafted final Motion for Preliminary Injunction and proposed order | Pamela M. Brown | 2.6 | 300.00 | 750.00 |
| 44 | 03/02/2012 | Drafted Verified Motion for Preliminary Injunction Prohibiting Respondent and Child from Leaving the Jurisdiction of this Court, Safeguarding Child's Travel Documents, Granting Petitioner Immediate and Unrestricted Access to the Child | Pamela M. Brown | 4.0 | 300.00 | 1200.00 |
| 45 | 03/05/2012 | File management working with secretary to finalize exhibits and to file Complaint and Mtn for Prelim Injunction | Pamela M. Brown | 0.5 | 300.00 | N/C |
| 46 | 03/06/2012 | File management to secretary re filing instructions and instruction to send courtesy copy to Marlene Gonzalez | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 47 | 03/06/2012 | Legal research re: Judge Briones' rules of court | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 48 | 03/08/2012 | Draft and send email to client confirming filing of Verified Complaint/Petition and next steps | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 49 | 03/07/2012 | Conference with secretary re service of process | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 50 | 03/07/2012 | Reviewed e-mail from client regarding service of process on Respondent | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 51 | 03/07/2012 | Draft and send email to to client regarding service on Respondent | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 52 | 03/07/2012 | Reviewed e-mail from secretary regarding service of process | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 53 | 03/07/2012 | Legal research re: evidentiary proof of Hague Convention elements; stay of custody proceedings, protective orders | Pamela M. Brown | 3.0 | 300.00 | 900.00 |
| 54 | 03/07/2012 | Draft and send email to co-counsel Javier Saenz re stay of state court proceedings | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 55 | 03/08/2012 | Telephone call to client re. status of service of process | Pamela M. Brown | 0.2 | 300.00 | 60.00 |

| 56 | 03/08/2012 | Conference with secretary re service of process | Pamela M. Brown | 0.2 | 300.00 | N/C |
|---|---|---|---|---|---|---|
| 57 | 03/09/2012 | Conference with secretary re service of process | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 58 | 03/12/2012 | Reviewed e-mail from client regarding service of process | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 59 | 03/12/2012 | Draft and send email to to client re service of process, hearings on motions in state and federal courts | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 60 | 03/12/2012 | Conference with secretary re service of process | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 61 | 03/12/2012 | Reviewed e-mail from secretary re service of process | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 62 | 03/13/2012 | Reviewed e-mail from District Clerk re summons | Pamela M.Brown | 0.1 | 300.00 | N/C |
| 63 | 03/13/2012 | Conference with secretary re summons, service of process | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 64 | 03/13/2012 | Telephone call from Respondent's attorney confirming receipt of courtesy copy of Verifed Complaint/Petition | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 65 | 03/13/2012 | Draft and send email to to local counsel re service of process | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 66 | 03/26/2012 | Legal research re: Hague Convention Article 16, and ICARA | Pamela M. Brown | 0.7 | 300.00 | 210.00 |
| 67 | 03/28/2012 | Reviewed e-mail from State Department re Article 16 letter sent to 388th Dist.-El Paso judge | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 68 | 03/28/2012 | Draft and send email to to State Department re Article 16 letter to Respondent attorney | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 69 | 03/28/2012 | Reviewed e-mail from State Department re Article 16 letter to Respondent's counsel | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 70 | 03/29/2012 | Telephone call from client re status of court proceedings in Mexico and US | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 71 | 04/01/2012 | Legal research re: federal court stays of state court custody proceedings | Pamela M. Brown | 0.6 | 300.00 | 180.00 |
| 72 | 04/02/2012 | Conference with Lic. Mariano Nunez re expert witness testimony | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 73 | 04/02/2012 | Legal research re: effect of denial of protective order in state court proceeding, emergency motion for stay | Pamela M. Brown | 0.3 | 300.00 | 90.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 74 | 04/02/2012 | Telephone call from local counsel re status of state court proceedings, rulings and Respondent's admissions | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 75 | 04/03/2012 | Travel from Weslaco to El Paso | Pamela M. Brown | 6.0 | 300.00 | 1800.00 |
| 76 | 04/03/2012 | Reviewed e-mail from client | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 77 | 04/03/2012 | Draft and send email to client to verify meeting | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 78 | 04/03/2012 | Reviewed e-mail from client | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 79 | 04/04/2012 | Text message sent to client regarding meeting | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 80 | 04/04/2012 | Conference with co-counsel Javier Saenz re. potential settlement options and communication with Mr. Rodela's attorney | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 81 | 04/04/2012 | Prepared for pre-trial hearing meeting with client for her preliminary Injunction testimony; document review | Pamela M. Brown | 3.5 | 300.00 | 1050.00 |
| 82 | 04/04/2012 | Telephone call to Judge Briones' law clerk re scheduling preliminary injunction hearing | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 83 | 04/04/2012 | Conference with local TRLA attorney re procedures and practices in W.D. Tex.-El Paso | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 84 | 04/06/2012 | Travel El Paso to Austin | Pamela M. Brown | 2.6 | 300.00 | 760.00 |
| 85 | 04/12/2012 | Reviewed Respondent's Answer to Verified Complaint/Petition for Return | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 86 | 04/12/2012 | Drafted summary of contested issues for preliminary injunction hearing | Pamela M. Brown | 0.5 | 300.00 | 160.00 |
| 87 | 04/12/2012 | Conference with TRLA Executive Director re TRLA policies on attorneys' fees | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 88 | 04/12/2012 | Drafted authorization and request to Chris Ramirez & Associates for medical records of child | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 89 | 04/12/2012 | Draft and send email to to local counsel re Respondent's claims and defenses | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 90 | 04/12/2012 | Drafted letter to fact witness Veronica Salazar Torres, special education teacher, re testimony at preliminary Injunction hearing | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 91 | 04/12/2012 | Investigation of potential witness for Respondent, Guillermo Gomez | Pamela M. Brown | 0.2 | 300.00 | 60.00 |

| 92 | 04/12/2012 | Conference with TRLA supervising attorney re preliminary Injunction brief on legal issues | Pamela M. Brown | 0.6 | 300.00 | N/C |
|----|------------|------|------|------|------|------|
| 93 | 04/12/2012 | Reviewed e-mail from local counsel | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 94 | 04/12/2012 | Draft and send email to to local counsel re contested issues after review of Respondent's answer | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 95 | 04/12/2012 | Legal research re: admissibility of evidence of foreign law | Pamela M. Brown | 0.5 | 300.00 | 150.00 |
| 96 | 04/12/2012 | Draft and send email to client re Respondent's answer to Complaint/Petition for Return | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 97 | 04/12/2012 | Reviewed reviewed Respondent's Answer | Pamela M. Brown | 0.5 | 300.00 | 150.00 |
| 98 | 04/13/2012 | Reviewed e-mail from client re fact issues raised by Respondent's Answer | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 99 | 04/13/2012 | Draft and send email to to client addressing concerns re Respondent's claims and defenses | Pamela M. Brown | 0.2 | 300.00 | 60.0 0 |
| 100 | 04/13/2012 | Conference with Lic. Mariano Nunez re Chihuahua law issues raised by Answer | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 101 | 04/13/2012 | Telephone call to to client to discuss hearing preparation, clarifying legal procedures and evidentiary proof | Pamela M. Brown | 1.5 | 300.00 | 450.00 |
| 102 | 04/13/2012 | Draft and send email to to consulting pediatrician re assessment of child | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 103 | 04/16/2012 | Reviewed e-mail from consulting Developmental Pediatrician re her evaluation of child's medical records | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 104 | 04/16/2012 | Reviewed review of transcript of protective order hearing in 366th Dist.-El Paso | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 105 | 04/16/2012 | Reviewed electronic communications/emails between client and Respondent | Pamela M. Brown | 0.6 | 300.00 | 180.00 |
| 106 | 04/16/2012 | Legal research re: US State Department documents addressed in Article 16 letter to 388th Dist.-El Paso, including the legal analysis at 51 Federal Register 10494 | Pamela M. Brown | 0.6 | 300.00 | 160.00 |
| 107 | 04/16/2012 | Reviewed transcript of hearing in 388th Dist.-El Paso on special appearance and temporary emergency jurisdiction (Petitioner's Exh. 11) | Pamela M. Brown | 0.5 | 300.00 | 150.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 108 | 04/17/2012 | Telephone call from law clerk for Judge Briones re hearing schedule | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 109 | 04/17/2012 | Draft and send email to client re preliminary Injunction hearing schedule | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 110 | 04/17/2012 | Reviewed e-mail from client re hearing, witnesses | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 111 | 04/17/2012 | Message to/from law clerk to Judge Briones re change of hearing date | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 112 | 04/17/2012 | Draft and send email to client re availability of witness for rescheduled preliminary injunction hearing and trial on merits | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 113 | 04/17/2012 | Drafted to witnesses re rescheduled hearing date | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 114 | 04/17/2012 | Drafted to witness re availability for hearings | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 115 | 04/17/2012 | Drafted to witness re availability for hearings | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 116 | 04/17/2012 | Reviewed Order setting hearing for May 2, 2012 at 10:00 a.m. | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 117 | 04/17/2012 | Draft and send email to client re witness letters | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 118 | 04/17/2012 | Reviewed e-mail from client re witness letters | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 119 | 04/17/2012 | Draft and send email to client re witnesses for hearing | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 120 | 04/16/2012 | Reviewed e-mail from client re availability of witness for Prelim Injunction hearing and/or deposition | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 121 | 04/18/2012 | Conference with colleague re procedural issues | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 122 | 04/19/2012 | Conference with Lic. Mariano Nunez re availability as expert witness for hearing; evaluation of custody order obtained from Mexican court | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 123 | 04/19/2012 | Reviewed e-mail from client re witness availability | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 124 | 04/19/2012 | Drafted and mailed letters to witnesses re hearing testimony | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 125 | 04/20/2012 | Conference with TRLA colleague re evidentiary issues | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 126 | 04/20/2012 | File management | Pamela M. Brown | 0.2 | 300.00 | N/C |

| 127 | 04/23/2012 | Conference with Lic. Nunez re Preliminary Injunction hearing | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 128 | 04/23/2012 | Telephone call to law clerk for Judge Briones re schedule | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 129 | 04/23/2012 | Telephone call from law clerk for Judge Briones re next available trial setting | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 130 | 04/24/2012 | Telephone call to opposing counsel re agreement to continue April 30, 2012 hearing date in 388th Dist.-El Paso in light of May 2, 2012 setting in federal court. | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 131 | 04/24/2012 | Legal research re: local rules re pre-filing exhibits | Pamela M. Brown | 0.4 | 300.00 | N/C |
| 132 | 04/25/2012 | Drafted and mailed letter to opposing counsel re deposition schedule and settlement | Pamela M. Brown | 1.0 | 300.00 | 300.0 0 |
| 133 | 04/25/2012 | Conference with Lic. Nunez re transcript of hearing on protective order | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 134 | 04/26/2012 | Legal research re: requirements for proof of foreign law | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 135 | 04/26/2012 | Prepared for pre-trial hearing on Preliminary Injunction | Pamela M. Brown | 2.0 | 300.00 | 600.00 |
| 136 | 04/26/2012 | Draft and send email to Lic. Nunez re testimony on Chihuahua Civil Code | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 137 | 04/26/2012 | Telephone call to client re transcript of in camera interview of her son, therapist report, preparation for hearing | Pamela M. Brown | 1.0 | 300.00 | 300.00 |
| 138 | 04/26/2012 | File management | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 139 | 04/27/2012 | Telephone call to witness Veronica Salazar re appointment for interview and deposition | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 140 | 04/27/2012 | Conference with Lic. Nunez re travel schedule to El Paso | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 141 | 04/27/2012 | Conference with Lic. Nunez re his testimony regarding client's custody rights under Chihuahua law | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 142 | 04/28/2012 | Prepared for pre-trial hearing on Preliminary Injunction; case law review, witness examination | Pamela M. Brown | 2.0 | 300.00 | 600.00 |
| 143 | 04/28/2012 | Prepare for trial case law review, witness exams | Pamela M. Brown | 2.0 | 300.00 | 600.00 |
| 144 | 04/29/2012 | Travel from Weslaco to El Paso for hearing on Preliminary Injunction | Pamela M. Brown | 6.5 | 300.00 | 1950.00 |

| 145 | 04/30/2012 | Conference with Lic. Nunez re preparation for hearing on Preliminary Injunction | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
|-----|-----------|---------------------------------------------|----------------|-----|--------|-------|
| 146 | 04/30/2012 | Telephone call to witness Veronica Salazar | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 147 | 05/01/2012 | Conference with Lic. Nunez re meeting with witness Veronica Salazar | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 148 | 05/01/2012 | Travel in El Paso to interview witness Veronica Salazar | Pamela M. Brown | 0.5 | 300.00 | 150.00 |
| 149 | 05/01/2012 | Interviewed witness Veronica Salazar | Pamela M. Brown | 1.0 | 300.00 | 300.00 |
| 150 | 05/01/2012 | Conference with local counsel re preliminary injunction hearing issues | Pamela M. Brown | 0.3 | 300.00 | N/C |
| 151 | 05/01/2012 | Prepared for court hearing on on Preliminary Injunction | Pamela M. Brown | 1.5 | 300.00 | 450.00 |
| 152 | 05/01/2012 | Prepared for court hearing on on Motion for Preliminary Injunction | Pamela M. Brown | 2.0 | 300.00 | 600.00 |
| 153 | 05/02/2012 | Interviewed client in advance of preliminary injunction hearing, meeting witnesses, reviewed purpose of hearing | Pamela M. Brown | 0.7 | 300.00 | 210.00 |
| 154 | 05/02/2012 | Hearing on Motion for Preliminary Injunction; agreed injunction order to be entered | Pamela M. Brown | 1.0 | 300.00 | 300.00 |
| 155 | 05/02/2012 | Prepared for pre-trial hearing met with opposing counsel and potential witnesses | Pamela M. Brown | 0.5 | 300.00 | 150.00 |
| 156 | 05/02/2012 | Drafted Preliminary Injunction, discussed draft with opposing counsel | Pamela M. Brown | 1.2 | 300.00 | 380.00 |
| 157 | 05/02/2012 | Telephone call from opposing counsel re time of deposition of Veronica Salazar | Pamela M. Brown | 0.3 | 300.00 | 80.00 |
| 158 | 05/02/2012 | Conference with secretary re notification to court reporter, videographer and translator for deposition schedule change | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 159 | 05/02/2012 | Prepared for deposition of witness Veronica Salazar | Pamela M. Brown | 1.0 | 300.00 | 300.00 |
| 160 | 05/02/2012 | Telephone call from secretary regarding Respondent's notice of objection to deposition of Veronica Salazar | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 161 | 05/02/2012 | Deposed witness Veronica Salazar, child's special education teacher in Cd. Juarez. | Pamela M. Brown | 2.5 | 300.00 | 750.00 |
| 162 | 05/02/2012 | Drafted and mailed letter to witness for trial to facilitate issuance of visa to travel to US | Pamela M. Brown | 0.3 | 300.00 | 80.00 |

| 163 | 05/02/2012 | Telephone call from opposing counsel redeposition of Veronica Salazar | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
|-----|-----------|---------|-----------------|-----|--------|--------|
| 164 | 05/03/2012 | Draft and send email to local counsel re trial arrangements | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 165 | 05/03/2012 | Draft and send email to client re results of deposition of Veronica Salazar | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 166 | 05/03/2012 | Travel El Paso to Weslaco | Pamela M. Brown | 6.0 | 300.00 | 1800.00 |
| 167 | 05/06/2012 | Telephone call from from client re visitation schedule under court's order | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 168 | 05/07/2012 | Draft and send email to client with copy of Preliminary Injunction order | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 169 | 05/07/2012 | Reviewed signed Preliminary Injunction order | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 170 | 05/09/2012 | Draft and send email to client re new court's schedule for trial | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 171 | 05/09/2012 | Reviewed e-mail from from client re service of process | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 172 | 05/11/2012 | Telephone call to Judge Guaderrama's law clerk re schedule for trial setting | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 173 | 05/14/2012 | Reviewed e-mail from Judge's law clerk re trial schedule | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 174 | 05/14/2012 | Draft and send email to Judge's law clerk re trial schedule | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 175 | 05/14/2012 | Draft and send email to State Department In response to their status inquiry | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 176 | 05/15/2012 | Draft and send email to exchange with law clerk | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 177 | 05/15/2012 | Reviewed e-mail from law clerk re trial schedule | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 178 | 05/15/2012 | Draft and send email to client re preferred trial dates | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 179 | 05/15/2012 | Reviewed e-mail from client re preferred trial dates | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 180 | 05/15/2012 | Draft and send email to opposing counsel proposing preferred trial date of May 30, 2012 | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 181 | 05/16/2012 | Drafted and mailed letter to opposing counsel re trial setting and possible settlement | Pamela M. Brown | 0.3 | 300.00 | 30.00 |
| 182 | 05/16/2012 | Reviewed e-mail from opposing counsel's office re her | Pamela M. Brown | 0.1 | 300.00 | 30.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | available trial date arrangements | | | | |
| 183 | 05/16/2012 | Draft and send email to opposing counsel requesting available trial dates | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 184 | 05/16/2012 | Draft and send email to court clerk re preferred trial dates | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 185 | 05/17/2012 | Reviewed e-mail from court trial is set for June 8, 2012 at 9:00 a.m. | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 186 | 05/21/2012 | Draft and send email to client re trial setting and issues related to trial prep | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 187 | 05/22/2012 | Travel making travel arrangements | Pamela M. Brown | 0.4 | 300.00 | N/C |
| 188 | 05/22/2012 | Draft and send email to local counsel re trial setting and arrangements | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 189 | 05/23/2012 | Reviewed deposition invoice, approved same | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 190 | 05/29/2012 | Prepare for trial brief re stay of proceedings in state court, expert witness disclosure, list of witnesses, and exhibits | Pamela M. Brown | 5.0 | 300.00 | 1500.00 |
| 191 | 05/29/2012 | Message to/from law clerk re court's order of May 17, 2012 (Doc # 14) requiring witness & exhibit lists filed within 10 days | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 192 | 05/29/2012 | Reviewed court's order of May 17, 2012 | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 193 | 05/29/2012 | Telephone call to law clerk re filing of witness and exhibit lists | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 194 | 05/29/2012 | Telephone call from law clerk re issues related to Chihuahua State law and Mexican choice of law | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 195 | 05/29/2012 | Telephone call to client re Information needed for exhibit and witness lists | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 196 | 05/30/2012 | Drafted and mailed letter to opposing counsel | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 197 | 05/30/2012 | Prepare for trial Review Chihuahua Civil Code, case law re application of Mexican law on patria potestad, review Respondent's list of witnesses and exhibits, evidentiary issues | Pamela M. Brown | 4.5 | 300.00 | 1350.00 |
| 198 | 05/30/2012 | Draft and send email to local counsel re trial preparation matters | Pamela M. Brown | 0.2 | 300.00 | N/C |

| 199 | 05/30/2012 | Reviewed Respondent's exhibit and witness lists, and exhibits attached thereto | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
|---|---|---|---|---|---|---|
| 200 | 05/31/2012 | Conference with Lic. Nunez re choice of law provisions in Mexican Constitution and Chihuahua Civil Code | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 201 | 05/31/2012 | Legal research re: patria potestad in Mexico as interpreted by U.S. courts In Hague Convention cases | Pamela M. Brown | 0.6 | 300.00 | 180.00 |
| 202 | 05/31/2012 | Drafted Petitioner's Brief on her Custody Rights and Applicable Mexican Law (Doc. # 24) | Pamela M. Brown | 1.1 | 300.00 | 330.0 0 |
| 203 | 05/31/2012 | Conference with Lic. Nunez re preparation of Supplemental Affidavit to clarify Chihuahua Code provisions | Pamela M. Brown | 2.0 | 300.00 | 600.00 |
| 204 | 06/01/2012 | Prepare for trial witness direct testimony | Pamela M. Brown | 0.8 | 300.00 | 240.00 |
| 205 | 06/04/2012 | Received/Sent instant message with Maria Jose Vallejo re translation of Mexican jurisprudence identified by Lic. Mariano Nunez | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 206 | 06/06/2012 | Drafted final edits to Supplemental Affidavit of Lic. Mariano Nunez, Petitioner's Brief on her Custody Rights and Applicable Mexican Law (Doc. # 24) | Pamela M. Brown | 6.0 | 300.00 | 1800.00 |
| 207 | 06/06/2012 | Document management Petitioner's Brief on her Custody Rights and Applicable Mexican Law (Doc. # 24) | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 208 | 06/08/2012 | Travel from Weslaco to El Paso | Pamela M. Brown | 5.5 | 300.00 | 1650.00 |
| 209 | 06/07/2012 | Prepare for trial witness prep, prepared trial notebook and exhibits, evidentiary issues | Pamela M. Brown | 10.0 | 300.00 | 3000.00 |
| 210 | 06/08/2012 | Trial to the Court; opening statements, direct and cross-examination of witnesses; exhibits offered and admitted; trial continued until June 11, 2012 at 8:30am | Pamela M. Brown | 6.0 | 300.00 | 2400.00 |
| 211 | 06/09/2012 | Reviewed hearing and deposition transcripts for admissible evidence | Pamela M. Brown | 2.5 | 300.00 | 750.00 |
| 212 | 06/09/2012 | Travel El Paso to Weslaco | Pamela M. Brown | 6.0 | 300.00 | N/C |
| 213 | 06/10/2012 | Draft and send email to local counsel re trial preparation issues | Pamela M. Brown | 0.1 | 300.00 | N/C |
| 214 | 06/10/2012 | Travel from Weslaco to El Paso | Pamela M. Brown | 5.5 | 300.00 | N/C |

| | | | | | | |
|---|---|---|---|---|---|---|
| 215 | 06/11/2012 | Prepare for trial review exhib-its, review of transcripts for cross-examination of Respondent | Pamela M. Brown | 0.7 | 300.00 | 210.00 |
| 216 | 06/11/2012 | Trial to the Court; cross-examination of Respondent, closing arguments; redacting confidential information from exhibits | Pamela M. Brown | 2.0 | 300.00 | 600.00 |
| 217 | 06/14/2012 | Reviewed Respondent's Brief Addressing the Meaning of "Habitual Residence" under ICARA as it Relates to the Evidence Adduced During the Trial of This Case (Doc. # 30) | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 218 | 06/14/2012 | Legal research re: case law cited in Respondent's Trial Brief (Doc. # 30) re habitual residence determination | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 219 | 06/22/2012 | Reviewed Court's Memorandum Opinion and Order (Doc. # 31) | Pamela M. Brown | 1.0 | 300.00 | 300.00 |
| 220 | 06/22/2012 | Telephone call to client to discuss decision, arrangements for return of child | Pamela M. Brown | 0.5 | 300.00 | 150.00 |
| 221 | 06/22/2012 | Telephone call to opposing counsel re execution of order, left 2 messages | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 222 | 06/28/2012 | Drafted and mailed letter to to opposing counsel re arrangements for surrender of child to client | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 223 | 06/28/2012 | Draft and send email to client re arrangements for child to return to Mexico with her. | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 224 | 06/28/2012 | Reviewed and edited time records for request for attorney fees | Pamela M. Brown | 4.0 | 300.00 | 1200.00 |
| 225 | 06/29/2012 | Telephone call from client about arrangements for surrender of child by close of business today, as per order of court Respondent has not replied to any of her messages regarding the transfer. | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 226 | 06/29/2012 | Telephone call to opposing counsel Marlene Gonzalez; left 2 messages requesting she return my call as soon as possible | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 227 | 06/29/2012 | Telephone call to social worker in TRLA EL Paso office, to expect client there in the afternoon to deliver documents and to accompany her to receive child when he is surrendered by Respondent | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 228 | 06/29/2012 | Draft and send email to 3 messages to opposing counsel | Pamela M. Brown | 0.6 | 300.00 | 180.00 |

Marlene Gonzalez from 5:15pm CST until 7:20pm CST regarding the failure of Respondent to return the child in a timely manner consistent with the Court's order (Doc. # 31)

| # | Date | Description | Attorney | Hours | Rate | Amount |
|---|------|-------------|----------|-------|------|--------|
| 229 | 06/29/2012 | Telephone call to multiple calls to client and social worker to inform them about conversations with opposing counsel and Respondent re his failure to return child to Petitioner | Pamela M. Brown | 0.7 | 300.00 | 210.00 |
| 230 | 06/29/2012 | Telephone call to local counsel re next steps regarding Respondent's non-compliance with court's order | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 231 | 06/29/2012 | Drafted Notice of Non-compliance with Court's Memorandum Opinion and Order (Doc. # 31). | Pamela M. Brown | 0.5 | 300.00 | 150.00 |
| 232 | 06/29/2012 | Drafted Notice of Respondent's Non-compliance with Court's Memorandum Opinion and Order (Doc. # 31). | Pamela M. Brown | 0.4 | 300.00 | 120.00 |
| 233 | 06/29/2012 | Drafted Billing Statement for application for attorneys' fees | Pamela M. Brown | 3.0 | 300.00 | 900.00 |
| 234 | 06/29/2012 | Telephone call from client Respondent had finally delivered child to her in El Paso at 10:30pm, too late to return to Cd. Juarez tonight They are staying with a relative in El Paso tonight. | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| 235 | 07/02/2012 | Reviewed e-mail from client regarding Respondent's possible violation of court's order last week. | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 236 | 07/02/2012 | Draft and send email to client regarding basis for her concerns about Respondent's violation of court order | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 237 | 07/02/2012 | Draft and send email to local counsel, (forwarding client's email) | Pamela M. Brown | 0.1 | 300.00 | 30.00 |
| 238 | 07/03/2012 | Reviewed e-mail from client, with attached copies of an order from the Juarez First Family Court of the Bravos Judicial District and a document describing a proceeding initiated by Respondent without notice to client. The documents recite that Respondent presented the child in person before the Mexican court. Rather than complying with the Court's order of return, Respondent removed the child from the jurisdiction of the W.D. Tex. on June 29, | Pamela M. Brown | 0.3 | 300.00 | 90.00 |

2012 in an attempt to retain custody of the child.

| 239 | 07/03/2012 | Legal research re: appropriateness of fee awards to non profit law firms, and Legal Service Corporation regulations regarding attorneys' fees and LSC President Jim Sandman's letter regarding Hague Convention cases | Pamela M. Brown | 0.5 | 300.00 | 150.00 |
|-----|------------|-------------|-----------------|-----|--------|--------|
| 240 | 07/03/2012 | Conference with Mariano Nunez re his expert witness fees statement | Pamela M. Brown | 0.5 | 300.00 | 150.00 |
| 241 | 07/04/2012 | Drafted Hourly fee Statement | Pamela M. Brown | 3.5 | 300.00 | 1050.00 |
| 242 | 07/05/2012 | Drafted Attorneys fees application | Pamela M. Brown | 2.5 | 300.00 | 750.00 |
| 243 | 07/05/2012 | Legal research re: attorneys fees awards for nonprofit public interest law firms both in general and specifically in Hague cases (cuellar v. joyce ) | Pamela M. Brown | 0.9 | 300.00 | 270.00 |
| 244 | 07/05/2012 | Legal research re: on attorney fee rates for folks of comparable experience and expertise | Pamela M. Brown | 0.5 | 300.00 | 150.00 |
| 245 | 07/05/2012 | Telephone call to Several telephone calls to/from Javier Saenz re. billing rates for attorneys of comparable experience and expertise in El Paso, also discussed contacting specific area lawyers and obtaining their affidavits | Pamela M. Brown | 0.5 | 300.00 | 150.00 |
| 246 | 07/05/2012 | Reviewed Affidavit of Mariano Nunez, expert fee report | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 247 | 07/05/2012 | Drafted and mailed letter to Opposing counsel requesting that they contact me regarding conferring on fees, costs, etc. | Pamela M. Brown | 0.3 | 300.00 | 90.00 |
| 248 | 07/05/2012 | Miscellaneous: tallying up litigation costs and expenses | Pamela M. Brown | 3.0 | 300.00 | 800.00 |
| 249 | 07/05/2012 | Conference with Mariano Nunez re. preparation of his expert fee statement and affidavit | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 250 | 07/05/2012 | Reviewed Affidavit of Mariano Nunez in Support of Expert fees | Pamela M. Brown | 0.2 | 300.00 | N/C |
| 251 | 07/05/2012 | Legal research re: ability of nonprofit legal aid firms to recover costs under ICARA | Pamela M. Brown | 4.5 | 300.00 | 1350.00 |
| 252 | 07/06/2012 | Drafted Brief in Support of Award of Attorneys fees to legal aid, fee application, Affidavit in Support | Pamela M. Brown | 9.0 | 300.00 | 2700.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 253 | 07/06/2012 | Legal research re: cases awarding 'necessary' expenses to Petitioner | Pamela M. Brown | 0.6 | 300.00 | 180.00 |
| 254 | 07/06/2012 | Drafted Final Billing statement | Pamela M. Brown | 0.2 | 300.00 | 60.00 |
| | | **TOTALS** | | 215.2 | | **$56,820.00** |

## ATTACHMENT 2:

### Attorney Javier Saenz's Billing Record

See also Pet'r's Appl. for Reasonable Att'ys' Fees & Costs and Br. in Supp., Ex. 2, ECF No. 35

### PROFESSIONAL SERVICES RENDERED

*Acosta–Saldivar v. Rodela,* No. 3:12–CV–00076–DB (W.D.Tex.-El Paso Div. (Guaderrama)) For Javier Saenz

| | Date | Services Performed | Staff | Hours | Hr Rate | Amount |
|---|---|---|---|---|---|---|
| 1 | 02/07/2012 | Conference with Client regarding the facts of her case; Explained and had Client sign representation agreement and other administrative documents; Advised Client about the process and what will come next. | Javier Saenz | 1.0 | 175.00 | 175.00 |
| 2 | 03/19/2012 | Reviewed e-mail from Pamela Brown about the possibility of Respondent being served with Hague action before state court hearing | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 3 | 03/13/2012 | Telephone call to Pamela Brown regarding the hearing on Client's Motion to Stay set for tomorrow In state court | Javier Saenz | 0.3 | 175.00 | N/C |
| 4 | 04/04/2012 | Conference with Pamela Brown regarding settlement options | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 5 | 04/12/2012 | Reviewed e-mail from Pamela Brown regarding Respondent's Answer and association of Respondent's co-counsel | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 6 | 04/12/2012 | Reviewed Respondent's Answer in the Hague Action | Javier Saenz | 0.3 | 175.00 | 52.50 |
| 7 | 04/12/2012 | Conference with Opposing counsel James Lucas regarding the proposed Agreed Preliminary Injunction | Javier Saenz | 0.2 | 175.00 | 35.00 |

| 8 | 04/12/2012 | Draft and send email to Pamela Brown regarding my review of Respondent's Answer in Hague action | Javier Saenz | 0.2 | 175.00 | 35.00 |
|---|---|---|---|---|---|---|
| 9 | 04/13/2012 | Draft and send email to Pamela Brown regarding my review of the transcript from prior state court hearing in anticipation of trial | Javier Saenz | 0.1 | 175.00 | N/C |
| 10 | 04/13/2012 | Telephone call to Court reporter of 368th to request transcript of Judge Macia's in camera interview of child at issue | Javier Saenz | 0.2 | 175.00 | 35.00 |
| 11 | 04/13/2012 | Draft and send email to From court reporter from 388th regarding status of transcripts ordered In anticipation of trial in Hague action | Javier Saenz | 0.1 | 175.00 | N/C |
| 12 | 05/02/2012 | Hearing on Preliminary Injunction | Javier Saenz | 1.0 | 175.00 | 175.00 |
| 13 | 05/24/2012 | Reviewed e-mail from Pamela Brown regarding availability to second chair trial | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 14 | 06/07/2012 | Legal research re: Admissibility of deposition testimony, authentication of deposition transcript and Transcripts from State Court Proceedings; Drafted Memorandum on these issues | Javier Saenz | 4.0 | 175.00 | 700.00 |
| 15 | 06/07/2012 | Conference with Pamela Brown regarding documents that need to be set aside and marked for trial | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 16 | 06/07/2012 | Reviewed child's school records from school the child attends in the United States | Javier Saenz | 0.6 | 175.00 | 105.00 |
| 17 | 06/07/2012 | Reviewed e-mail from Pamela Brown regarding evidentiary issues and case law supporting admissibility | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 18 | 06/08/2012 | Prepare for trial Finalized review of aD exhibits and other records provided by Client; Finalized memo on evidentiary Issues; copied and highlighted relevant case law for use at trial | Javier Saenz | 1.5 | 175.00 | 262.60 |
| 19 | 06/08/2012 | Trial Served as Second Chair | Javier Saenz | 8.0 | 175.00 | 1400.00 |
| 20 | 06/22/2012 | Reviewed Court's Memorandum Opinion and Order (Doc. # 31) | Javier Saenz | 0.6 | 175.00 | N/C |
| 21 | 07/02/2012 | Draft and send email to regarding preparation of attorneys fees application | Javier Saenz | 0.1 | 175.00 | N/C |
| 22 | 07/05/2012 | Telephone call to Colbert Caldwell regarding prevailing | Javier Saenz | 0.1 | 175.00 | 17.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | rates for attorney's fee in El Paso | | | | |
| 23 | 07/05/2012 | Telephone call to Carmen Rodriguez regarding prevailing rates for attorney's fees in El Paso | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 24 | 07/05/2012 | Draft and send email to TRLA supervising attorney Soraya Yanar Hanshow regarding prevailing rates for attorney's fees in El Paso | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 25 | 07/05/2012 | Telephone call to TRLA Attorney Viginia Schramm regarding her recent award of attorney's fees in Judge Martinez's court | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 26 | 07/05/2012 | Draft and send email to Pamela Brown regarding obtaining Declaration from Paco Dominguez on prevailing rates for attorney's fees In El Paso | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 27 | 07/05/2012 | Drafted Affidavit to be submitted along with Pamela Brown's request for attorney's fees | Javier Saenz | 1.3 | 175.00 | N/C |
| 28 | 07/05/2012 | Draft and send email to Pamela Brown with signed declaration from Paco Dominguez | Javier Saenz | 0.1 | 175.00 | 17.50 |
| 29 | 07/06/2012 | Scanned document into case management system | Javier Saenz | 0.1 | 175.00 | 17.50 |
| | | **TOTALS** | | 20.7 | | $3,202.50 |